381 So.2d 140 (1980)
Willie Arthur LUCAS
v.
STATE of Mississippi.
No. 51648.
Supreme Court of Mississippi.
February 13, 1980.
Rehearing Denied April 2, 1980.
*141 Fielding L. Wright, James H. Heidelberg, Pascagoula, for appellant.
A.F. Summer, Atty. Gen. by Robert D. Findley, Special Asst. Atty. Gen., Jackson, for appellee.
Before ROBERTSON, P.J., and WALKER and LEE, JJ.
WALKER, Justice, for the Court:
This appeal is taken from the Circuit Court of Jackson County, Mississippi, wherein the appellant, Willie Arthur Lucas, was tried and convicted of the crime of burglary and sentenced to serve a term of seven years in the custody of the Mississippi Department of Corrections.
On appeal, appellant argues and briefs the following assignments of error:

I.
The trial court erred in not suppressing the physical evidence produced at trial which was obtained in a search of appellant's apartment.

II.
The trial court erred in not granting the appellant's motion for a directed verdict and the verdict was against the overwhelming weight of the evidence.

*142 III.
The trial court erred in not allowing the jury to ask questions of the defendant.
A summary of the salient facts and testimony is as follows:
E.R. Triggs, who lived in the Lodge Apartment in Pascagoula, Mississippi, testified that on the morning of October 10, 1977, the day of the alleged burglary, he was drinking coffee on his apartment patio when he saw a young black man about five feet, six inches, and approximately one hundred and fifty pounds, approaching the end of the Tanglewood Apartments which was about sixty yards from Triggs' apartment. From Triggs' second floor balcony he observed the black man through a pair of binoculars. Triggs testified that the man picked up a clump of dirt and threw it at the window and knocked it out, thereupon the black man stuck his hand in the window, unlocked it and went into the apartment. Triggs further testified that he did not call the police because he did not have a telephone. However, he did relate later that afternoon what he saw to Charles Hooker, the victim who occupied the burglarized apartment. Triggs also pointed out and identified appellant in the courtroom as the black man who broke the window and entered the apartment.
Charles Hooker testified that on October 10, 1977, he lived at Tanglewood Apartments. Hooker stated that he left his apartment at 7:30 a.m., and later returned during his lunch break. Upon returning to his apartment, he noticed the back window of his apartment was broken and upon closer examination found that $1,400.00 in cash was missing, which he had hidden on the top of an antique dresser behind the mirror. Also missing was a .38 revolver pistol, a timex watch with a blue face and a twist-o-flex band, and an afro "pick" comb, all of which were later listed and reported as missing with the Pascagoula Police Department.
Hooker further testified that on October 16, 1977, some six days later, he received information that the appellant Lucas was the one who broke into his apartment. On October 17, 1977, Hooker received further information that Lucas was staying with some people in Tanglewood Apartment # 205. Hooker went to this apartment and asked the occupant, Robert Cockraham, who was renting the apartment, for permission to go through Lucas' belongings. Permission was given and Hooker proceeded to the living room hall closet of the apartment and began to search Lucas' clothes. Upon examining the clothes, Hooker pulled a watch from one of the pockets and stated to Cockraham, "This is the watch." At that time, Hooker stated he left the watch in the apartment and went back to his apartment and called Detective Harold Biggs, asking him to come out, that he had found the watch that was taken from his apartment.
Detective Biggs met Hooker at his apartment, and they then went to Cockraham's apartment. Hooker introduced Detective Biggs to Cockraham and Hooker asked Cockraham for permission again to search Lucas' clothing. Hooker testified again that Cockraham gave him permission to search the apartment. Hooker further testified that Cockraham and Detective Biggs just followed him around when he searched the clothes again. Upon getting the watch out again, Hooker stated that Cockraham said, "If that is your watch take it." Hooker then gave the watch to Detective Biggs and he took it into evidence. The watch was introduced into evidence during Hooker's testimony, to which the appellant's attorney objected. The court overruled the objection.
Cockraham's testimony corroborated that of Hooker's in that he gave permission to Hooker to come in and search the apartment. Cockraham further testified that Hooker was by himself on the first search of the apartment when Hooker found the watch and that on the second visit Hooker brought Detective Biggs with him. Cockraham also stated that Hooker did the searching on the second visit. Detective Biggs did not conduct a search.

I.
Appellant now contends that the trial court erred in failing to suppress the *143 Timex wristwatch which was recovered by Charles Hooker, the victim of the burglary, who searched appellant's clothing located in the living room closet of an apartment rented by Robert Cockraham.
During the state's direct examination of Charles Hooker, the witness identified the wristwatch and stated that he had recovered it from an apartment where appellant had been staying. Counsel for appellant then requested permission to voir dire the witness and it was during such proceedings, held out of the presence of the jury, that the following motion for a mistrial was interposed:
BY MR. WRIGHT: That is all I've got, Your Honor. Your Honor, we move for a mistrial. This man [Charles Hooker] searched clothes and he is trying to make an identification on articles which he claims he found, by inference so far to this jury, that he found without any sort of legal search. He has no right to go in there and search a man's house.
The motion was then overruled and the jury returned to the courtroom. No further objections or statement of grounds were made prior to the state to the state's request that the watch be admitted into evidence.
BY MR. MOORE: I want to introduce this watch as State's Number Two in evidence.
BY THE COURT: Any objection, Mr. Wright.
BY MR. WRIGHT: Same objection.
BY THE COURT: Overruled.
THE WATCH WAS THEREUPON MARKED AS STATE'S EXHIBIT NUMBER TWO IN EVIDENCE.
Upon appeal, appellant concedes that the Fourth Amendment proscription of unreasonable searches and seizures is inapplicable to a search conducted by a private individual for purely private reasons, thereby abandoning the only grounds for objection which he interposed before the trial court. However, appellant now asserts (1) that Hooker's return to Cockraham's apartment, accompanied by Detective Biggs, constitutes a separate and second search wherein Hooker acted as an agent of the police; and (2) that Cockraham did not possess the requisite authority to consent to any search of appellant's personal effects.
The objection set out above to the introduction of the wristwatch was properly overruled by the trial court for the specific ground assigned. The appellant now, on appeal, presents an entirely different ground of objection to the testimony and exhibits offered.
In Peters v. State, 158 Miss. 530, 130 So. 695 (1930), quoted with approval in Stringer v. State, 279 So.2d 156 (1973), this Court stated:
Referring to 38 Cyc. at page 1397, we find the rule stated which is applicable to this case. "The statement of one or more specific grounds of objection to the introduction of evidence is a waiver of all other grounds of objections." This rule seems to be approved by a vast majority of the courts of this country, including the Supreme Court of the United States.
In the lower court counsel made a specific objection and gave a specific ground therefor, and in this court he presents an entirely different and wholly unrelated ground of objection to the testimony offered. If the objection was in the mind of counsel, he never made it so appear to the lower court. A specific objection on a specific ground stated to the court does not warrant on appeal a reversal of a case on another and different ground of objection... . (158 Miss. at 534, 130 So. at 695) (Emphasis added).
This rule was followed in Boring v. State, 253 So.2d 251 (Miss. 1971), where we stated:
Objections to evidence must bring to the attention of the trial judge the specific ground on which it is contended such evidence is inadmissible so that the trial judge may determine whether or not such evidence is available to objector's adversary.
The rule requiring specific objections is necessary because to permit litigants to hold back objections until on appeal would mean that costly new trials *144 would be had where valid objections could have been sustained during the trial. Roberds v. State, 187 So. 755 (Miss. 1939); Kimbrall v. State, 178 Miss. 701, 174 So. 47 (1937); Dobbs v. State, 167 Miss. 609, 142 So. 500 (1932); Williams v. State, 171 Miss. 324, 157 So. 717 (1934). This rule has been recognized by the federal court in this jurisdiction. Gann v. Smith, D.C., 318 F. Supp. 409 (1970).
Assuming arguendo that the appellant had not waived all other grounds of objection to the introduction of the evidence, the appellant's argument that his Fourth Amendment rights were violated by the second search by Hooker acting as a police agent is unavailing.
The Fourth Amendment proscribes only governmental action. A search by a private individual for purely private reasons does not raise Fourth Amendment implications. It is clear from the record and there is no doubt that the initial entry into the apartment was by Hooker, a private person, for non-official purposes. That, of course, was outside the bounds of the Fourth Amendment. Even if Hooker was acting as an agent for the police on the second visit, that search would not constitute a "search" within the meaning of the Fourth Amendment, so long as the view was confined to the scope and product of the first search.
In United States v. Bomengo, 580 F.2d 173 (5th Cir.1978), the Fifth Circuit Court of Appeals rejected the argument that, for Fourth Amendment purposes, a governmental view had subsequent to a private view constituted a "new search." Judge Coleman speaking for the Court stated:
We have long recognized that a police view subsequent to a search conducted by private citizens does not constitute a "search" within the meaning of the Fourth Amendment so long as the view is confined to the scope and product of the initial search. (580 F.2d at 175).

II.
It is next urged that the trial court erred in overruling his motion for a directed verdict at the conclusion of the state's testimony and that the verdict of the jury was against the overwhelming weight of the evidence. The appellant is presently precluded from raising the issue concerning the motion for a directed verdict, because he waived his motion by presenting evidence in his own behalf subsequent to the adverse ruling of the court on his motion for a directed verdict. Watts v. State, 317 So.2d 715 (Miss. 1975).
As to the sufficiency of the evidence, we think it only necessary to state that there was ample evidence to support the verdict of the jury and we decline to intrude into the fact-finding duty of the jury.

III.
It is next argued that the trial court erred in sustaining the state's objection to defense counsel's invitation to the jury to propound questions to the appellant.
At the conclusion of defense counsel's redirect examination of the appellant, the following transpired:
[BY MR. WRIGHT:]
Q. If it please the Court I would invite the jury to ask any questions that they would like of Mr. Lucas.
BY MR. MOORE: Your Honor, of course, I object to that.
BY THE COURT: Sustained.
BY MR. WRIGHT: With that Your Honor, I have no further questions of this witness.
This Court does not approve the practice of a trial court inviting jurors to ask questions of witnesses. This privilege should only be granted when, in the sound discretion of the trial judge, it appears that it will aid a juror in understanding some material issue involved in the case and then, ordinarily, when some juror has indicated that he wishes such a point clarified. Here, the defense counsel invited the jury to ask questions when no juror had voiced a need for clarification of any issue or testimony. *145 It was improper for the defense attorney to request the jurors to ask questions of the witness, and the trial judge was correct in sustaining the objection.
There existed no reversible error in the trial of this cause. The judgment of the trial court is affirmed.
AFFIRMED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, BROOM, LEE, BOWLING and COFER, JJ., concur.