501 So.2d 1128 (1987)
Charles Duane DAVIS, Jr.
v.
SINGING RIVER Electric Power Association and Grove Manufacturing Company.
No. 55771.
Supreme Court of Mississippi.
January 28, 1987.
*1129 Donald C. Dornan, Jr., Denton, Persons, Dornan & Bilbo, Blessey & Cavanaugh, Biloxi, for appellant.
Floyd J. Logan, Hopkins, Logan, Vaughn & Anderson, Gulfport, James N. Compton, Carter O. Bise, Bryan, Nelson, Allen, Schroeder & Compton, Biloxi, James W. Backstrom, Bryan, Nelson, Allen, Schroeder & Backstrom, Pascagoula, for appellees.
Before WALKER, C.J., and DAN M. LEE and GRIFFIN, JJ.
WALKER, Chief Justice, for the Court:
The appellant, Charles Duane Davis, initiated this action by Bill of Complaint, as amended, filed in the Circuit Court of Jackson County seeking $2,500,000.00 in compensatory damages alleged to have resulted from injuries sustained in an electrical shock accident. Following trial by jury, judgment was entered in favor of the appellees, Grove Manufacturing Company and Singing River Electric Power Association (hereinafter Grove and Singing River). We find no error in the trial below and affirm.
Davis was employed by Mid-State James Paving Company (hereinafter Mid-State) as a road and shop mechanic. On September 24, 1980, the date of the accident, Davis was assigned to the company's North Plant, a temporary asphalt facility established by the company to facilitate construction of Interstate Highway 10. The electrical service to the plant was designed, installed and maintained by Singing River. Davis usually worked at the company's South Plant in Moss Point, Mississippi. The purpose of his assignment on September 24th was to assist Gene Therrell in the repair of a transmission on a front-end loader.
The men sought a level location at the North Plant to begin their work. The first site selected was rejected due to a low hanging overhead power line. The men then selected an area once occupied by some truck scales which was "clear, flat, and level, and [without] any traffic" [truck].
Prior to making the repairs it was necessary to use a hydraulic crane, also known as a cherry-picker, to remove several counter weights from the loader prior to pulling its transmission. The crane was designed and manufactured by Grove. Therrell was operating the crane from inside its cab while Davis, located on the ground, was attaching a chain from the crane to the counter weights when the crane made contact with an overhead wire sending approximately 7,600 volts of electricity through Davis' body. As a result of the accident fourteen percent (14%) of Davis' body was severely burned. He was hospitalized for fifteen (15) weeks and returned to work for Mid-State in January of 1981.
The appellant's Bill of Complaint was couched in terms of strict liability, negligent design and breach of warranty. After reviewing the evidence and hearing all testimony, both expert and lay, the jury entered *1130 a verdict in favor of Grove and Singing River, hence this appeal.
Following trial, the appellant filed a motion for a new trial on the ground that he learned, after trial, that one of the jurors had a son who was represented by counsel for Singing River, and neither the juror or opposite counsel informed the court of this fact during voir dire. Appellant asserts the lower court's denial of his motion for a new trial was error.
The discretion vested in a trial judge with respect to a motion for a new trial is quite broad. This Court's authority to reverse is limited to those cases wherein the trial judge has abused his discretion. Shelton v. Puckett, 483 So.2d 354 (Miss. 1986).
A hearing was had on appellant's motion and the testimony produced at that hearing was that counsel for Singing River had entered an appearance on behalf of the juror's son five (5) months prior to the trial of the case sub judice. Other counsel had been hired by Nationwide Insurance Company to defend the son for his involvement in an automobile collision. The juror's son at the time of this trial was a resident of Washington, D.C. and counsel had not met him until December 22, 1983, after the trial of this case. Furthermore, counsel did not personally know the juror who sat on this case, or that he was related to anyone his firm legally represented or was representing.
Appellant's argument is unpersuasive as there is no record that the juror was aware of counsel's representation of his son.
The appellant next argues it was error to introduce into evidence photographs depicting facilities different from that where the accident occurred.
The first photographs complained of were introduced over objection during cross-examination of the appellant. The photographs depicted the overhead distribution electrical system at the south asphalt facility where Davis routinely worked. The photographs were introduced to establish that Davis had worked under the same conditions at the South Plant as existed at the North Plant and was knowledgeable as to the obvious danger and care required of one working near electrical power lines.
A plaintiff may not close his eyes to obvious dangers and cannot recover where he possesses facts from which he would be legally charged with the appreciation of the danger. Braswell v. Economy Supply Company, 281 So.2d 669 (Miss. 1973). The appellant's claim fails as he himself admitted the electrical power service provided by Mississippi Power Company at the South Plant was almost exactly the same as that service provided by Singing River to the North Plant. Davis also admitted he did not look up to see the power lines above the work site and not until after the incident did he realize that he and Therrell were working too close to the power lines.
The second set of photographs was introduced to impeach the testimony offered by the appellant's expert witness, Briggs. Briggs was of the opinion that there existed a foreseeable possibility of the power lines coming into contact with heavy equipment at the North Plant. The photographs depicted a facility known as the Bayou Creole Pumping Station where heavy equipment was sometimes utilized. The electrical layout at the Creole Station was designed by Briggs and utilized overhead distribution lines.
The appellant argues that the testimony of a witness may not be impeached by the introduction of extrinsic evidence on a collateral matter; however, he failed to raise this specific objection at trial. He initially objected on the basis that a proper foundation had not been laid. His objection was sustained and once a foundation was properly laid the appellant again objected to the introduction of the photographs on the basis that the witness who was testifying was incompetent to state whether Briggs actually made the final decision to install the lines as they were designed at the Creole Pumping Station. Out of the presence of the jury testimony was developed that the *1131 lines at the Creole Station were installed as designed by Briggs and had not been altered at the time the photographs were taken. The court then allowed the introduction of the photographs for impeachment purposes.
The appellant's objection was based on a specific ground, i.e., the incompetency of the testifying witness. Miss.R.Evid. 103(a) states, inter alia, that error may not be predicated upon a ruling which admits evidence unless a substantial right of the party is affected, and a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context. Because the appellant stated the specific ground for his objection  the witness's incompetency  we need not consider whether any other ground was apparent from the context. In other words, the context, which included appellant's specific objection, made it obvious that appellant considered no other ground. Therefore, the ground which he now urges on appeal  impermissible impeachment by extrinsic evidence on collateral matter  was waived by his failure to raise it at trial. Miss.R.Evid. 103(a)(1); Lucas v. State, 381 So.2d 140, 143-44 (Miss. 1980). See also Murphy v. State, 453 So.2d 1290, 1292 (Miss. 1984) (where no specific ground for objection was given, and where ground was obvious from context, issue could be considered on appeal).
Appellant next contends Instruction G-32, a negligent design instruction relating to Grove, was improperly submitted to the jury. He argues that he abandoned his negligence claim and that this was evident through the testimony he elicited at trial and that he proceeded solely on a theory of strict liability. He concedes, however, that the instruction is a proper statement of the law as it applies to a negligent design case. We find no error in the court's granting Instruction G-32 as at no time did appellant inform the court or opposite counsel that he was amending his pleadings as they pertained to Grove and the claim of negligent design.
Furthermore, the appellant's objection at trial to Instruction G-32 was entered on the basis that the instruction was peremptory. No assignment of error based on the granting of an instruction will be considered on appeal by this Court unless specific objection was made to the instruction in the trial court stating the particular ground or grounds for such objection. Rule 42 of the Rules of the Supreme Court of Mississippi. Having made a specific objection to Instruction G-32 the appellant has waived his right to raise a different objection before this Court.
We are of the opinion that the evidence offered was sufficient to support the jury's verdict. In affirming we are mindful of the fact that the verdict of the jury is to be given great weight. No trial is free of error; however, to require reversal the error must be of such magnitude as to leave no doubt that the appellant was unduly prejudiced. The record before us reveals no reversible error. No trial is perfect, all that is guaranteed is a fair trial. Parmes v. Illinois Cent. Gulf R.R., 440 So.2d 261 (Miss. 1983). We are of the opinion the appellant received a fair trial, and we affirm.
AFFIRMED.
ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.