746 So.2d 912 (1999)
Timothy HAGENEY and Toni Hageney, Appellants,
v.
JACKSON FURNITURE OF DANVILLE, INC., Appellee.
No. 97-CA-01387 COA.
Court of Appeals of Mississippi.
March 9, 1999.
Rehearing Denied July 20, 1999.
Certiorari Denied October 21, 1999.
*914 James Kenneth Wetzel, Mariano Javier Barvie', Gulfport, Attorneys for Appellants.
Dorrance Dee Aultman Jr., Gulfport, Attorney for Appellee.
BEFORE BRIDGES, C.J., PAYNE, AND SOUTHWICK, JJ.
BRIDGES, C.J., for the Court:
¶ 1. Timothy Hageney brought this products liability action against Jackson Furniture of Danville, Inc. in the Circuit Court of Hancock County. Toni Hageney, Tim's wife, joined in the suit claiming a loss of consortium. The jury found in favor of Jackson Furniture. Feeling aggrieved, the Hageneys bring this appeal asserting (1) the jury verdict was contrary to the overwhelming weight of the credible evidence, and (2) the trial court erred as a matter of law (a) in denying the Hageneys's motion in limine requesting that testimony be excluded regarding (i) any negligence of Tim Hageney, (ii) Tim Hageney's *915 prior medical history, and (iii) the consumption of alcoholic beverages by Tim and Toni Hageney prior to the incident, (b) in granting jury instructions D-2A and 5A, (c) in granting Jackson Furniture's motion in limine excluding evidence of a prior failure of a similar bar stool, (d) in allowing into evidence the substance of the cross-examination of Dr. Stuart Phillips by Alpha Gulf Coast, Inc. by way of video deposition, and (e) in refusing jury instruction P-12. Jackson Furniture perfected a cross-appeal, to be considered only in the event a new trial is deemed necessary, assigning as error the trial court's exclusion of Tim Hageney's statements made immediately after the incident affected its substantial right to a fair trial. This Court concludes that the issues raised on appeal are without merit and affirms the judgment entered on the jury's verdict.

FACTS
¶ 2. On April 15, 1994, Tim Hageney and his wife, Toni, traveled from their home in Marrero, Louisiana to gamble at the Bayou Caddy's Jubilee Casino in Waveland. Upon arrival at the casino, Tim tried his luck on the quarter slot machines before proceeding to the video poker bar. Tim settled in to play a video poker machine to the far right end of the bar. Approximately thirty minutes later the bar stool in front of the video poker machine collapsed causing Tim to fall to the ground. Although Tim's exact weight at the time of the accident is unknown, three days later Tim weighed in excess of 350 pounds.
¶ 3. The bartender on duty, Don Hunter, observed Tim squeezing his full body into the armed bar stool. Hunter testified he saw Tim leaning back in the chair before the accident. The bar itself obscured Hunter's vision preventing Hunter from seeing whether two legs of the four-legged bar stool were off the ground. A brass rail surrounded the bottom of the bar and acted as a footrest. When the bar stool collapsed, Hunter was talking to another bartender. Upon hearing the commotion, Hunter turned, saw Tim on the floor, and immediately reported the incident to the security booth. The officer in the security booth turned the surveillance monitor toward Tim.
¶ 4. The casino surveillance videotape, played at the trial, showed Tim lifting himself off the floor, Security Officer Wayne McCardy arriving on the scene, Tim and his wife sitting next to each other at the bar, and Security Officer Stephen Coco handing Tim a guest injury report to complete. Tim indicated on the report he was not injured. Coco testified he watched Tim for a few minutes before leaving to perform other duties. The Hageneys continued to play the video poker machines for about thirty minutes. On the way home, the Hageneys ate lunch in New Orleans.
¶ 5. Tim testified he began experiencing sharp pains in his low back after he returned home. The following morning Tim was examined by his family physician, Dr. Robert Murphy, who prescribed muscle relaxers. The pain progressed over the weekend and on Monday Dr. Murphy referred Tim to Dr. Sudderth. Dr. Sudderth prescribed an MRI and physical therapy for his low back. The physical therapy rendered only temporary relief.
¶ 6. In July 1994 Tim was evaluated by Dr. Stuart Phillips, an orthopedic surgeon in New Orleans, who prescribed medication and a lumbar corset to prevent bending or stooping. Tim was also placed on light duty with limited lifting.
¶ 7. Tim testified he wore the lumbar corset about eight to ten hours a day while working as a senior quality control inspector with Brown & Root, Inc. at the Shell/Narco Refinery. During a normal work day, Tim testified he spent from six to eight hours on his feet and that his job required him to climb stairs and to bend, stoop and lift. As a result of wearing the corset, he began to develop problems with circulation in his legs.
*916 ¶ 8. On January 26, 1996, Dr. Murphy prescribed a Jobst pump for Tim's use to pump the fluid building in the legs back up to the kidneys. Tim testified he spent approximately three to four hours at night six nights a week in the Jobst pump. As a direct result of his injuries, Tim incurred medical bills in the amount of $8,580.51, out-of-pocket travel expenses to medical providers of $361.65, out-of-pocket expenses for lawn care which he formerly did himself of $1,510, and lost wages in the amount of $1,484.15 as a result of taking off work to go to medical appointments.
¶ 9. Timothy Hageney filed an action in the Circuit Court of Hancock County against Alpha Gulf Coast, Inc. d/b/a Bayou Caddy's Jubilee Casino asserting a premises liability claim and against Jackson Furniture of Danville, Inc., as manufacturer of the bar stool, asserting a products liability claim under Miss.Code Ann. § 11-1-63 (Supp.1998). Toni Hageney joined in the suit claiming a loss of consortium under Miss.Code Ann. § 93-3-1 (Rev.1994). Prior to trial, the Hageneys settled their claims with Alpha Gulf Coast, Inc.
¶ 10. After a three-day trial, the jury returned a verdict in favor of Jackson Furniture on May 15, 1997. The trial court denied the Hageneys's motion for judgment notwithstanding the verdict or motion for new trial, and this appeal was perfected.

ARGUMENT AND DISCUSSION OF THE LAW

I. WHETHER THE VERDICT OF THE JURY WAS CONTRARY TO THE OVERWHELMING WEIGHT OF THE CREDIBLE EVIDENCE.
¶ 11. The Hageneys assert the denial of their motion for judgment notwithstanding the verdict or motion for a new trial was reversible error in that no competent evidence was offered to support Jackson Furniture's defense that Tim's misuse of the bar stool was the sole proximate cause of his injuries. Jackson Furniture responds that there was ample evidence for a juror to reasonably infer that Tim misused the bar stool.
¶ 12. When reviewing the trial court's denial of a motion for judgment notwithstanding the verdict, this Court looks at the sufficiency of the evidence,
examin[ing] all of the evidencenot just the evidence which supports the nonmovant's casein the light most favorable to the party opposed to the motion. All credible evidence tending to support the non-movant's case and all favorable inferences reasonably drawn therefrom are accepted as true and redound to the benefit of the non-mover. If the facts and inferences so considered point so overwhelmingly in favor of the movant that reasonable men could not have arrived at a contrary verdict, the motion should be granted. On the other hand, if there is substantial evidence opposed to the motion, that is, evidence of such quality and weight that reasonable and fairminded men in the exercise of impartial judgment might reach different conclusions, the jury verdict should be allowed to stand and the motion denied, and, if it has been so denied, we have no authority to reverse.
C & C Trucking Co. v. Smith, 612 So.2d 1092, 1098 (Miss.1992) (citations omitted).
¶ 13. In a motion for a new trial, the weight of the evidence is challenged. Henson v. Roberts, 679 So.2d 1041, 1045 (Miss.1996). The grant or denial of a motion for a new trial is a matter within the sound discretion of the trial judge. The credible evidence must be viewed in the light most favorable to the non-moving party. When the evidence is so viewed, the motion should be granted only when upon a review of the entire record the trial judge is left with a firm and definite conviction that the verdict, if allowed to stand, would work a miscarriage of justice. Our authority to reverse is limited to those cases wherein the trial judge has abused *917 his discretion. Moody v. RPM Pizza, Inc., 659 So.2d 877, 881 (Miss.1995).
¶ 14. In the case sub judice, the Hageneys alleged that a manufacturing defect caused the stool to collapse and Tim to be injured. Jackson Furniture argued Tim's misuse of the stool was the sole proximate cause of the incident. The record reveals that Tim sat in the bar stool for approximately thirty minutes before it collapsed.
¶ 15. Tim's testimony at trial that he was sitting full in the seat with his back against the back of the bar stool was impeached by his deposition testimony in which Tim could not recall how he was sitting in the chair prior to the incident. Also Don Hunter, the bartender in the video poker bar, testified that although he could not see the legs of the stool, he saw Tim leaning back in the chair prior to the chair collapsing.
¶ 16. In support of the Hageneys's position, Joe Albert McEachern, Jr., a mechanical engineer, testified on direct that several design and/or manufacturing defects contributed to the failure of the bar stool:
Q. From what you understand from the testimony that's been described by Mr. Hageney do you know of anything that Mr. Hageney did, at least from his testimony, that would have contributed to the ultimate failure and collapse?
A. I really have no way to know. I didn't deeply examine any testimony or anything at the time of my analysis [of the bar stool in question]. I put in my report that it could be aggravated by somebody rocking the chair or something like that. I think that's an obvious factor that has to be considered in any case.
Q. Is a rocking of a chair a foreseeable use of that product?
A. Certainly.
Q. By a manufacturer?
A. That's certainly foreseeable.
Q. And is rocking normally accomplished if one moves a chair in or out from under him, will the chair rock in some degree?
A. Certainly.
Q. Will that put stresses on the joints?
A. Absolutely. We all know, our mothers always told us if we rock a chair back on one leg or something it puts undo stress on the chair, and it's not a good practice. But in designing a commercial chair you have to consider a certain amount of that kind of abuse is going to occur.
¶ 17. While being cross-examined by Jackson Furniture regarding his testimony of the design and/or manufacturing defect, McEachern acknowledged that the failure of the stool would have been consistent with a man the size of Tim tipping the stool backwards causing the legs to bend and fracture.
¶ 18. Jackson Furniture's theory that the stool collapsed due to Tim improperly leaning the bar stool back on its rear two legs was supported by its expert witness, Harold R. Myers, a consulting engineer. Based on a failure analysis on the stool, Myers concluded that had Tim been sitting fully in the stool his weight would have been evenly distributed on all four legs of the stool and, if there was a defect in the manufacturing of the stool, the stool would have collapsed underneath Tim, not away from Tim, as the fracture indicated and McEachern testified.
Q. And what did you observe from this [bar stool] that led you to that conclusion?
. . .
A. You notice that this leg split through here to this point right here, and at that point it broke off because this section got thin. If this had failed from a shear load, from a load coming down on it.... This splinter would have gone on out to the edge. As you can see it's beginning to taper. It would have gone on out to the edge because before this can move this would have to *918 have a place to go. So what happened here is we had a load which placed this area in bending....
Q. In other words, these legs had to be off the ground in order to move to create the bend?
A. Yes.
¶ 19. Whether the stool's failure was caused by a manufacturing defect and/or Tim's size and his improper use of the stool by leaning the stool back on two legs was a fact question for the jury to determine. When facts are in dispute as they were in this case, the jury is given the power to resolve the factual disputes, and this jury did so in favor of Jackson Furniture. Moreover, it was the province of the jury to weigh the credibility of the witnesses. After careful review of the record, it is this Court's opinion that a "reasonable, hypothetical juror" could have returned a verdict as this one did. There is ample evidence supporting the jury's verdict. When the evidence is disputed and different conclusions argued, the Court "has refused to take an issue from the jury or to interfere with a jury's decision." McKinzie v. Coon, 656 So.2d 134, 140 (Miss.1995). This issue is without merit.

II. WHETHER THE TRIAL COURT ERRED AS A MATTER OF LAW IN DENYING THE HAGENEYS'S MOTION IN LIMINE AND IN GRANTING JACKSON FURNITURE'S MOTION IN LIMINE.

¶ 20. The Hageneys next contend that the trial court erroneously denied their motion in limine requesting the exclusion of testimony regarding (1) Tim's medical history prior to April 15, 1994, (2) whether Tim was contributorily negligent or assumed the risk, and (3) any consumption of alcoholic beverages by Tim. Further, the Hageneys assert that the trial court erred in granting Jackson Furniture's motion in limine barring the Hageneys from introducing any evidence of an alleged similar accident involving another bar stool manufactured by Jackson Furniture.
¶ 21. The admission or exclusion of evidence lies within the sound discretion of the trial court whose determination will not be reversed absent abuse of discretion. Thompson Mach. Commerce Corp. v. Wallace, 687 So.2d 149, 152 (Miss.1997).
¶ 22. Based upon the test adopted by the Mississippi Supreme Court in Whittley v. City of Meridian, 530 So.2d 1341 (Miss.1988), the trial court did not abuse its discretion in ruling on the motions in limine.
[A] motion in limine "should be granted only when the trial court finds two factors are present: (1) the material or evidence in question will be inadmissible at a trial under the rules of evidence; and (2) the mere offer, reference, or statements made during trial concerning the material will tend to prejudice the jury."
Id. at 1344 (quoting State v. Quick, 226 Kan. 308, 597 P.2d 1108 (1979)).

A. Prior Medical History
¶ 23. During discovery Jackson Furniture ascertained that Tim had been treated prior to April 1994 for swelling in his legs. Anticipating Jackson Furniture would introduce evidence relating to the prior medical history, the Hageneys moved the trial court to exclude such evidence arguing the swelling in 1991 and 1993 was unrelated to the accident. Denying the motion, the trial court found that the prior medical history dealing with any maladies that affect the swelling of Tim's lower extremities would be admissible.
¶ 24. Testifying in his own behalf, Tim stated he was in overall good health prior to April 15, 1994:
Q. Any other serious injuries or medical conditions that you have ever had in your life to your knowledge that was in any way disabling?
A. No, sir. The only thing I had one time, and I had twoI had a problem with dehydration. I was vomiting and I couldn't keep any fluids down. I spent I *919 believe it was two, maybe three days in the hospital for that, and haven't had any problem since then. That was in late 80's. 89 I think it was.
Q. Prior to April of 1994, which we're here about today, how would you generally classify your overall health condition?
A. I would classify my overall health condition as very good. I could do anything that I wanted to, I could go any place that I wanted to. I could do anything that I wanted to.
¶ 25. However, Tim went on to testify that he was treated by Dr. Robert Murphy in 1991 and August 1993 for an infection in his left leg which caused swelling in his leg, and in October 1993 for an infection in his right leg. Each time Dr. Murphy instructed Tim to stay off his legs for a few days and prescribed antibiotics for the infection and Lasix to reduce the swelling. Tim testified that he had no other problems with his legs from October 1993 until he was fitted with the lumbosacral corset in July 1994 to alleviate his lower back pain incurred when the bar stool collapsed under him. Wearing the lumbosacral corset caused Tim to develop lymphedema.
¶ 26. During the cross-examination, Tim acknowledged that he refilled his prescription for Lasix to treat edema in June 1994, and the medication is the same he was prescribed by Dr. Phillips to treat the lymphedema in July 1994.
¶ 27. Further, Dr. Murphy testified by video deposition that the corset was "extremely tight" on Tim and that the corset was probably aggravating his edema and causing the lymphedema in his legs. This Court has held any evidence tending to show that any part of a plaintiff's injury may have occurred as a result of some other cause was relevant and, therefore, admissible when a plaintiff is seeking damages for personal injuries. Walker v. Lamberson, 243 So.2d 410, 411 (Miss. 1971). Accordingly, we find the trial court did not abuse its discretion in allowing the jury to consider Tim's prior medical history which was relevant and not unfairly prejudicial.

B. Contributory Negligence and/or Assumption of the Risk
¶ 28. The trial court also denied the Hageneys's request that Jackson Furniture be precluded from presenting testimony regarding or arguing any negligence on the part of Tim asserting there was no testimony or evidence supporting or reasonably inferring that Tim did anything wrong when he sat in the chair at the video poker bar. The trial court denied the motion finding that to preclude such testimony would be tantamount to a partial summary judgment which it refused to consider until testimony was presented.
¶ 29. A review of the record reveals Jackson Furniture's theory of the case was amply supported by the evidence introduced at trial. The expert witness for the Hageneys testified that the bar stool fractured as the result of a defect in the design and/or manufacturing process. Jackson Furniture, on the other hand, produced an expert witness who offered his opinion that the failure of the bar stool was caused by Tim tilting the stool back to the point only two legs of the four-leg stool touched the floor. The bartender, Don Hunter, testified he saw Tim leaning back in the stool before the incident. "Negligence may be proven by circumstantial evidence, that is `evidence of a fact, or a set of facts, from which the existence of another fact may reasonably be inferred.'" Hardy v. K Mart Corp., 669 So.2d 34, 38 (Miss.1996). Whether Tim misused the stool and whether such misuse was the sole proximate cause or a contributing proximate cause of Tim's injuries were fact questions for the jury to determine. Bobby Kitchens, Inc. v. Mississippi Ins. Guar. Ass'n, 560 So.2d 129, 131 (Miss.1989).
¶ 30. We find no prejudicial error was committed by the trial court in denying this aspect of the motion in limine simply because the substance of Jackson Furniture's *920 argument and theory of the case was allowed into evidence.

C. Consumption of Alcoholic Beverages
¶ 31. The Hageneys contend the trial court committed reversible error by denying their motion in limine and allowing Jackson Furniture to elicit testimony of their consumption of alcohol on the day of the accident. Tim admitted to having three vodka and grapefruit juice drinks in a short period of time. (Tim testified they arrived at the casino at 9:00 a.m. and left about 10:45 a.m.) Jackson Furniture argues Tim's consumption of three alcoholic beverages immediately prior to and at the time of the incident goes to the issue of his recollection of the type of chair involved in the accident (Tim failed to recollect that the bar stool had a swivel base, not a fixed base) and whether he tipped the chair backwards causing the accident (at his deposition Tim was uncertain whether he leaned back in the chair at the time of the accident; however, at trial he testified unequivocally that he did not tilt the chair on two legs). Further, Jackson Furniture contends that Tim continued to drink at the bar following the accident which would be inconsistent with one injured who would seek medical attention.
¶ 32. Toni Hageney testified she had had a few alcoholic drinks prior to the accident. Her memory of the events occurring after the accident is also cloudy. She testified that she immediately stopped gambling and waited at the bar with her husband for someone to take an accident report:
Q. You weren't continuing to play your video poker like nothing had happened?
A. Oh, no indeed.
Q. Have you reviewed that videotape we got that's been marked as Defendant's Exhibit 1?
A. I certainly have looked at it.
Q. Doesn't it depict you just going about your business playing video poker?
A. It may seem that way, but it wasn't. I could have been talking to the bartender.
¶ 33. The surveillance videotape taken by the casino was shown to the jury. After hearing arguments of counsel, the trial court found that the Hageneys's state of sobriety was relevant in the jury's assessment of their credibility in relating the events surrounding the incident, and Tim's consumption of alcohol was relevant to the issue of whether Tim was contributorily negligent. Mississippi Power v. Lumpkin, 725 So.2d 721 (¶ 13) (Miss.1998). In denying the motion in limine regarding the issue of consumption of alcohol, the trial court stated:
Again, as the old law says there are two twin-towering goals in the trial process, and one of them is to search for the truth, and in that method that we have of searching for the truth it's my responsibility to see to it that the jury has all that it needs to have, all the evidence that it needs to have to seek that objective while at the same time allowing the other side the opportunity to test the credit worthiness or trustworthiness of what that evidence is. That's kind of been my beckon, and based on that I'm going to go ahead and deny the Motion in Limine concerning the consumption of alcohol. And I'm going to find that it does bear relevancy on the issue, certainly at least of leaning back, and it's an event that was transpiring there, and I think it's kind of commonplace that people know that, generally speaking at these casinos, that's what they generally do.
¶ 34. The trial court conducted the required on-the-record balancing under M.R.E. 403 (potential for unfair prejudice must "substantially outweigh" probative value of relevant evidence). Id. Thus, the trial court did not abuse its discretion and properly allowed the testimony.

D. Evidence of Similar Failures
¶ 35. The Hageneys claim that the trial court erred when it excluded evidence *921 of another bar stool manufactured by Jackson Furniture breaking on February 2, 1994, at the casino to show Jackson Furniture had actual notice of the design and/or manufacturing defect in the bar stool and failed to correct it. The proffered testimony of Basil Turbyfill, president of Jackson Furniture, revealed that the stool referred to by the Hageneys as the "Authement chair" which allegedly was broken on February 2, 1994, was not brought to the attention of Jackson Furniture until December 4, 1994, when a lawsuit was filed.
¶ 36. Turbyfill testified he was requested by the insurance company to inspect two bar stools on April 8, 1994 (one week prior to the Hageney fall) concerning arm rests slipping or working loose. While in the warehouse Turbyfill noticed a chair "that looked as though it had been run over by a truck," but he was told by the insurance adjuster not to do anything with that stool because she did not have the paperwork on it.
¶ 37. Also proffered was testimony by the Hageneys's expert witness, McEachern, who corroborated Turbyfill's testimony describing the reason for the inspection of two chairs at the casino's warehouse on April 8, 1994:
Q. (BY THE COURT) Now when you say here in [McEachern's handwritten notes regarding the inspection on April 8, 1994], "broken frame not part of," is that claim?
A. Yes.
. . .
A. Yes. I think that says, "not part of the claims." There was some confusion about the chair with the lady who was in charge of the claims and she wasn't sure whether that chair was a problem at that time or not.
Q. When you're talking about claims you're talking about the claim that the Bayou Caddy was saying?
A. I was hired by the insurance company to evaluate failures of these chairs, and the statement was they had had several. And when I got there they weren't real clear about all of the ones. This isthe one that was there [the chair involved in the February 2, 1994 incident] it wasn't clear what the circumstances were of that. She said, "We'll come back to that later." What was the immediate issue was with Mr. Turbyfill to look into why the arms were coming off the chairs.
. . .
Q. What was the allegeddid anything happen because of the failure, was anyone injured?
A. One of the arms, yes. I was told that someone had fallen out of the chair and had an injury claim.
Q. Because of one of the arms?
A. That's correct.
. . .
Q. It wasn't the one that was on the floor?
A. No.
. . .
A.... [W]e inspected three chairs; one was a broken frame that was laying in a pallet, and they said this is not the part of the claim that we want to deal with right now. We may come back to that. We don't really know the circumstances of that one right now. Particularly, Mr. Turbyfill had wanted to find out about why the arms were coming loose, and we had two that we looked at and dissected. One had the arm completelyit had fallen loose, and I think the other one was just loose....
Q. When you say Mr. Turbyfill wanted to find out about it, the claims people wanted to find out about it as well, is that correct.
A. Yes. They invited him to come and me to come all at the same time so we could evaluate the circumstances and find out the facts.
. . .

*922 Q. As far as your meeting on April 8th.... You had no knowledge of anybody being injured because of a collapse of a chair?
. . .
A. I was aware that that chair had broken but we didn't know the circumstances, and [the insurance adjuster] said she didn't have the paperwork on that one right now and we'd deal with it later.
¶ 38. The trial court excluded testimony referring to the alleged failure of a bar stool on February 2, 1994, sustaining Jackson Furniture's motion in limine based on the proffered testimony and Jackson v. Firestone Tire & Rubber Co., 788 F.2d 1070 (5th Cir.1986). To be probative of a design and/or manufacturing defect, evidence must show that the similar accidents occurred under substantially similar circumstances and involved substantially similar components. Id. at 1082.
¶ 39. Furthermore, the Mississippi Supreme Court has held that evidence of prior accidents may be used to show only two thingsthe existence of a dangerous condition and knowledge of such condition. However, this evidence is admissible for these purposes only upon a showing of substantial similarity of conditions. Parmes v. Illinois Cent. Gulf R.R., 440 So.2d 261, 265 (Miss.1983) (quoting Illinois Cent. R.R. Co. v. Williams, 242 Miss. 586, 605-06, 135 So.2d 831, 839 (1961)).
¶ 40. Thus we find that the lower court correctly refused to allow the Hageneys to establish the defect in the design and/or manufacturing of the bar stool in question by testimony regarding the alleged failure of a different bar stool some three months before. The trial judge was within his discretion in overruling this motion in limine, and this point of error is without merit.

III. WHETHER THE TRIAL COURT ERRED IN GRANTING JURY INSTRUCTIONS D-2A AND D-5A AND IN REFUSING JURY INSTRUCTION P-12.
¶ 41. The assignments of error dealing with the trial court's granting of jury instructions D-2A and D-5A or its denial of jury instruction P-12 are without merit. We would note at the outset the general rule that jury instructions must be considered as a whole. We are not to confine our consideration to one particular instruction in isolation. Flight Line, Inc. v. Tanksley, 608 So.2d 1149, 1157 (Miss. 1992). If, based upon a review of the instructions as a whole, the Court can conclude that the jury has been reasonably, though not perfectly, apprized of the applicable law, there can be no reversible error based upon an isolated defect in a particular instruction. Id.

A. Jury Instructions D-2A and D-5A
¶ 42. The Hageneys assign as error the granting of jury instruction D-2A regarding contributory negligence and/or jury instruction D-5A on assumption of risk inasmuch as there was no testimony presented which would indicate that Tim's use of the bar stool could constitute negligence, or that Tim knowingly assumed an appreciable risk.
¶ 43. As discussed above, the issue regarding contributory negligence was properly before the jury. Jackson Furniture's theory of the case was that Tim's misuse of the bar stool by tipping the stool back on its two rear legs was the sole proximate cause of his injuries, if any. Further, the record reveals that because of Tim's size he was careful about the type of chair in which he would sit and how he would sit in a chair. Thus, Tim assumed the risk that he would be injured if he tipped the bar stool on two legs.
¶ 44. The trial court granted Instruction D-2A and D-5A over the Hageneys's timely objection. Instruction D-2A[1] reads as follows:

*923 The Court instructs you that the Plaintiff, Timothy Hageney, is bound by the law to take ordinary or reasonable care for his own safety. He is required to use, in the interest of his own safety, that degree of care and prudence which a person of ordinary intelligence and prudence would exercise under similar or like circumstances. He must make reasonable use of his own faculties to observe and avoid any potential dangers or harms at all times.
If you believe by a preponderance of the evidence in this case that Timothy Hageney did not use the required care for his own safety, and, if you further believe that this lack of care on his part was the sole and proximate cause of the accident, then it is your sworn duty as jurors in this case to find for the Defendant, Jackson Furniture of Danville, Inc.
That was an accurate statement of the law. Miss.Code Ann. § 11-7-15 (1972) states:
In all actions hereafter brought for personal injuries, or where such injuries have resulted in death, or for injury to property, the fact that the person injured, or the owner of property, or person having control over the property may have been guilty of contributory negligence shall not bar recovery, but damages shall be diminished by the jury in proportion to the amount of negligence attributable to the person injured, or the owner of the property, or the person having control over the property.
¶ 45. Instruction D-2A informed the jury that if Tim was the sole proximate cause of his own injuries, then it must find for Jackson Furniture of Danville, Inc. That is certainly true.
¶ 46. Under instruction D-5A, the jury was to determine from a preponderance of the evidence (1) whether Tim "improperly utilized the chair in question, and (2) that such use of the chair in question was an abnormal handling or misuse of the chair; and (3) such misuse was not reasonably foreseeable by the Defendant; and (4) such misuse was the sole proximate cause" of his injuries. If the jury so found, then it was to return a verdict for Jackson Furniture. That instruction is a correct statement of the principle of assumption of risk and is in accord with the court's holding in Tharp v. Bunge Corp., 641 So.2d 20, 24 (Miss.1994) (holding assumption of the risk is no longer a total bar to recovery). To return a verdict for Jackson Furniture, the jury had to find that Tim misused the stool and such misuse was not reasonably foreseeable by Jackson Furniture and was the sole proximate cause of Tim's injuries, not a proximate cause of his injuries.
¶ 47. Moreover, instructions D-2A and D-5A highlight from the defense perspective aspects of jury instructions P-8, P-9 and P-18 (revised). Jury instruction P-8 reads:
The Court instructs the Jury that the doctrine of strict liability in tort is defined as follows: The manufacturer of a product is strictly liable for injuries caused by a product manufactured by it which are [sic] in an unreasonably dangerous condition or not reasonably safe for its intended use and purpose at the time such product leaves the manufacturer's control, and this is true, whether or not the manufacturer was at fault in creating such unsafe conditions or in failing to discover and eliminate it.
In order for the Plaintiff to recover from the manufacturer of the bar stool in this case, Plaintiff must prove to you by a preponderance of the evidence in this case that the bar stool left the hands of the manufacturer containing defects which made it unreasonably safe for its intended use and purpose and that the bar stool had not been changed or altered between the time it left the hands of the Defendant's control and the *924 date the Plaintiff was injured and that as a direct and proximate result of such defective condition, if any, Plaintiff sustained injuries.
Jury instruction P-9 provides:
The Court instructs the Jury that regarding Plaintiff's negligent claim, in order to recover, Plaintiff must prove the following elements by a preponderance of the evidence:
1. That the Defendant, Jackson Furniture of Danville, Inc., owed the Plaintiff a duty of care and that the Defendant failed to use reasonable care in designing the bar stool in question; and
2. That this failure, if any, of Jackson Furniture of Danville, Inc., to use reasonable care in its design of the bar stool was the proximate cause of the damage to the Plaintiff.
If you find from a preponderance of the evidence, that the Plaintiff has proved these elements, then it is your sworn duty to return a verdict in favor of the Plaintiff on the theory of negligence.
Jury instruction P-18 (revised) provides:
If you find from a preponderance of the evidence in this case (1) that Jackson Furniture of Danville, Inc., are [sic] in the business of manufacturing bar stools and (2) the bar stool was in a defective condition when sold by Jackson Furniture of Danville, and (3) danger from the bar stool in its defective condition was not reasonably foreseeable by the ordinary customer with the ordinary knowledge common to the community as to the characteristics and common usage of bar stools and (4) the bar stool was expected to and did reach the use of Plaintiff, Timothy Hageney without substantial change in the condition in which it was sold by Jackson Furniture of Danville, and (5) Plaintiff was injured while using the bar stool in a manner which was reasonably foreseeable by the Defendants [sic], Jackson Furniture of Danville, and (6) the defective design of the bar stool was the sole proximate cause or proximate contributing cause of Timothy Hageney's injuries, then your verdict shall be for the Plaintiff.
If Plaintiff fails to prove any one or more of the above, then your verdict shall be for the Defendant.
¶ 48. Further, the trial court instructed the jury regarding contributory negligence in instruction C-25:
If you find from a preponderance of the evidence in this case that:
1. Jackson Furniture of Danville, Inc., defendant, was negligent as defined in the courts [sic] other instructions, and
2. Timothy R. Hageney, plaintiff, was negligent as defined in the courts [sic] other instructions, and,
3. the negligence of both Jackson Furniture of Danville, Inc., defendant and Timothy R. Hageney, plaintiff were approximate [sic] contributing causes of the accident in this case, and,
4. Timothy R. Hageney, plaintiff sustained injuries and damages caused by the combined causal negligence of Jackson Furniture of Danville, Inc., defendant and Timothy R. Hageney, plaintiff,
then you will, in arriving at your verdict determine that sum of money which will fairly and adequately compensate Timothy R. Hageney, plaintiff for said injuries and damages, and reduced [sic] this sum in proportion to the causal negligence attributed to Timothy R. Hageney, plaintiff using the following method:
1. determine the proportion that plaintiffs causal negligence bears to the causal negligence as a whole, as a part or percentage of 100% (100% = total causal negligence of both actors in case),
2. multiply the sum of money determined as damages by the percentage figure representing the proportion *925 of Timothy T. [sic] Hageney, plaintiff's causal negligence,
3. subtract the result of your multiplication from the sum you first determined to be Timothy R. Hageney, plaintiff's damages,
4. return your verdict for Timothy R. Hageney, plaintiff for the damages remaining after you have reduced them in proportion to plaintiffs causal negligence.
¶ 49. Thus, this instruction states that if Jackson Furniture is as little as 1% negligent, it would be improper to exonerate it. Tharp, 641 So.2d at 24. Conversely, if the jury determined Tim to be 100% liable for the bar stool collapsing, then the jury must exonerate Jackson Furniture. The jury instructions, read together, properly instructed the jury on the liability issues as well as on our contributory negligence laws.
¶ 50. The jury verdict in favor of Jackson Furniture of Danville, Inc. reflects the jury finding that Tim failed to take ordinary or reasonable care for his own safety and that such lack of care on his part was the sole and proximate cause of the accident. This assignment of error is without merit.

B. Jury Instruction P-12
¶ 51. The Hageneys next contend that under Mississippi law a "failure to warn" instruction must be given, and the trial court's sua sponte refusal to instruct the jury regarding the lack of a warning on the bar stool constituted reversible error.
¶ 52. Jackson Furniture argues proposed jury instruction P-12 contained an incorrect statement of the law and was properly refused by the trial court.
¶ 53. Miss.Code Ann. § 11-1-63(e) (Supp.1998), provides that where a plaintiff is alleging that a product is defective because no warning or instruction accompanied the product or the warning or instruction accompanying the product was inadequate "the manufacturer or seller shall not be liable if the danger posed by the product is known or is open and obvious to the user or consumer of the product, or should have been known or open and obvious to the user or consumer of the product, taking into account the characteristics of, and the ordinary knowledge common to, the persons who ordinarily use or consume the product."
Proposed jury instruction P-12 reads:
You are instructed that a product may be defective and unreasonably dangerous, even though properly manufactured, if it is unaccompanied by instructions, precautions and warnings needed to safely use the product in a manner intended by the manufacturer. Even if you find that the bar stool manufactured by the Defendant herein was properly manufactured and assembled, you may return a verdict for Plaintiff if you find the bar stool was not accompanied by instructions, precautions and warning necessary for the user of the bar stool to be used safely in a manner intended and if you further find that such failure to warn, if any, was the proximate cause of the injuries sustained by the Plaintiff, then it is your sworn duty to find for the Plaintiff against the Defendant, Jackson Furniture of Danville, Inc.
¶ 54. Omitted from instruction P-12 was the "if the danger posed by the product is known or is open and obvious to the user" language required by § 11-1-63(e). When a plaintiff is relying on § 11-1-63(a)(i)(2) in a products liability action, the known or open and obvious danger defense is a factor to be considered by the jury in determining whether a product is unreasonably dangerous. Fipps v. Glenn Miller Construction Co., 662 So.2d 594, 596 (Miss.1995) (finding a dangerous condition which is open and obvious is considered in terms of mitigation of damages, and therefore, is an issue for the jury to resolve); Horton v. American Tobacco Co., 667 So.2d 1289, 1300 (Miss.1995) (stating the "open and obvious" defense is no longer *926 an absolute bar to the plaintiffs' recovery in this case or any other products liability case); Materials Transp. Co. v. Newman, 656 So.2d 1199, 1203 (Miss.1995) (determining application of the comparative negligence doctrine now supplants the "open and obvious" defense); Seymour v. Brunswick Corp., 655 So.2d 892, 895 (Miss. 1995) (finding openness and obviousness of a product's design is simply a factor to consider in determining whether a product is unreasonably dangerous and not a bar to recovery); Tharp, 641 So.2d at 25 (deciding the open and obvious danger defense to negligence in products liability is no longer a complete bar to recovery).
¶ 55. Tim was questioned by Jackson Furniture on cross:
Q. (BY MR. AULTMAN) Sir, you acknowledge you're a big fellow, is that correct?
A. Yes, sir.
Q. And is one of the things or one of the reasons that you wouldn't tip back in a chair is because of your size?
A. That could be a reason, but the main reason is onceif I do lean back in a chair, like anybody, it doesn't take much before your hit that point where you pass that center of gravity. It's just not the smart thing to do.
Q. Nobody had to warn you about leaning back in a chair?
A. No, sir.
Q. Didn't have to write a warning on this thing saying, "Don't lean back in it?"
A. I wouldn't think that I'd have to have a warning on it. No, sir.
¶ 56. Thus, the potential danger in tipping the bar stool was obvious to Tim and a warning was not necessary. Instruction P-12 did not include the open and obvious language found in the statute. The trial court can and should refuse to instruct the jury when the instruction is an incorrect statement of the applicable law. Bunch v. Shaw, 355 So.2d 1383, 1385 (Miss.1978). The trial court properly refused the proposed instruction. This assignment of error is without merit.

IV. WHETHER THE TRIAL COURT ERRED AS A MATTER OF LAW IN ALLOWING JACKSON FURNITURE BY WAY OF CROSS-EXAMINATION OF DR. STUART PHILLIPS, TO INTRODUCE QUESTIONS SUBMITTED BY ALPHA GULF COAST, INC. WHICH HAD BEEN DISMISSED AS A DEFENDANT FROM THE ACTION PRIOR TO TRIAL.
¶ 57. Finally, the Hageneys claim that the trial court erred when it allowed the jury to hear the attorney for Alpha Gulf Coast, Inc. asking questions of Dr. Stuart Phillips by way of his videotaped deposition. According to the Hageneys, hearing someone other than the attorney for Jackson Furniture asking questions by way of cross-examination of Dr. Phillips caused the jurors to be confused, and under M.R.E. 403 the cross-examination by Alpha Gulf Coast should have been excluded. We find no merit to this assignment of error.
¶ 58. Alpha Gulf Coast was a defendant at the time Dr. Phillips's trial deposition was given and thus participated in the deposition. The Hageneys settled their claims with Alpha Gulf Coast and presented an order dismissing Alpha Gulf Coast to the trial court on the first day of trial. At trial, the Hageneys sought to introduce Dr. Phillips's videotaped deposition and objected to the inclusion of any substantive question or answer asked by Alpha Gulf Coast on the ground it would confuse the jurors. The trial court redacted the portion of the deposition that identified Alpha Gulf Coast as a defendant as well as the name of its attorney; however, the court allowed the substantive questions and answers posed to Dr. Phillips as set forth in M.R.C.P. 32(a)(4):
If only part of a deposition is offered in evidence by a party, an adverse party may require him to introduce any other part which ought in fairness to be considered *927 with the part introduced, and any party may introduce any other parts.
¶ 59. Because the Hageneys offered the deposition into evidence, the trial court did not abuse its discretion in allowing the substantive questions and answers posed to Dr. Phillips by Alpha Gulf Coast to be heard by the jury.
¶ 60. The Hageneys's specific objection to the inclusion of the cross-examination by Alpha Gulf Coast was that the jury would be confused. Therefore, the additional ground which they now urge on appealcumulative testimonywas waived by their failure to raise it at trial, and is not addressed by this Court. Davis v. Singing River Elec. Power Ass'n, 501 So.2d 1128, 1131 (Miss.1987). This assignment of error is meritless.

CROSS-APPEAL
¶ 61. Jackson Furniture perfected a cross-appeal only in the event a new trial was deemed necessary by this Court assigning as error the trial court's exclusion of Tim's statements made immediately after the incident affected its substantial right to a fair trial. Because we affirm the jury verdict below we do not address this assignment of error.
¶ 62. THE JUDGMENT OF THE HANCOCK COUNTY CIRCUIT COURT IS AFFIRMED. APPELLANTS ARE TAXED WITH COSTS OF THIS APPEAL.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., COLEMAN, DIAZ, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR.
NOTES
[1] We note that the instruction set forth in the record excerpts to which appellants directed our attention as jury instruction D-2A did not match jury instruction D-2A found in the court's record.