233 So.2d 105 (1970)
Ernest M. CREEL, By His Father and Next Friend, Milton Creel
v.
GENERAL MOTORS CORPORATION and Carey Chevrolet Company, Inc.
No. 45692.
Supreme Court of Mississippi.
March 16, 1970.
Rehearing Denied April 6, 1970.
*107 Collins & Tew, W.O. Dillard, Laurel, for appellant.
Heidelberg, Sutherland & McKenzie, M.M. Roberts, Hattiesburg, John M. Dunnam, New Augusta, for appellees.
*106 ETHRIDGE, Chief Justice:
This suit was brought by Ernest M. Creel, plaintiff-appellant, by his father and next friend, Milton Creel, to recover for personal injuries which he received in a one-car traffic accident on October 13, 1967. The defendants were General Motors Corporation, manufacturer of the 1965 Chevrolet Impala automobile which plaintiff was driving, and Carey Chevrolet Company, Inc., the dealer who sold the car new to plaintiff's father on March 29, 1965. The declaration was based on two theories: (1) Negligence in manufacturing and testing the vehicle, and in designing the accelerator linkage and steering assemblies; and (2) strict products liability, by putting on the market a car in a defective condition and unreasonably dangerous to the purchaser. At the close of plaintiff's evidence, the Circuit Court of the Second Judicial District of Jones County gave a directed verdict for Carey Chevrolet Company. Plaintiff submitted to the jury instructions only on the theory of strict products liability, by defective design of the accelerator linkage. The jury's verdict was for General Motors. From the judgments for both defendants, Creel has taken this appeal.
The jury's verdict was amply supported by the evidence. Milton Creel purchased new this 1965 Chevrolet on March 29, 1965. The accident occurred on October 13, 1967, almost thirty months and 30,000 miles later. On November 10, 1965, General Motors issued a bulletin to its Chevrolet service personnel which stated:
Under certain freezing conditions, when driving in mud or on slush covered roads, the material thrown up by the wheels may pack around the T V linkage on power-glide equipped 1964-65 Chevelles and 1965 Chevrolets. It may then freeze and prevent further movement of throttle linkage.
* * * to correct this condition, transmission controls splash shield and extension *108 assembly, part No. 3886397 has been released.
In May 1966, Creel brought his car to the agency and the splash shield was attached. After that date, the front doors were repaired, and pistons were replaced.
On the night of October 13, 1967, Ernest Creel, his date, and two other couples left at halftime of a football game to ride in the Creel automobile. They stopped at a drive-in and were in the process of returning to the stadium when the accident occurred at the bottom of a series of small hills. The surface of the street over a drainage culvert had dropped four to six inches for a distance of about eight feet. Ernest Creel said that when he pressed on the accelerator it stuck, and that he tried to release it with his foot but the pedal pulled off, the accelerator remained fixed, and after he applied the brakes, the car continued to increase speed until it struck a tree.
After the accident, the automobile was removed from the scene and inspected the next morning by an experienced mechanic. He found the accelerator linkage to be in idle position and working normally. When the parts were removed from the car, all of them worked freely, and when introduced in evidence, the accelerator parts were usable and serviceable.
The bulletin issued by General Motors with reference to installation of a splash shield was a circumstance to be considered along with the other evidence. The jury was warranted in finding that it did not imply defective design of the accelerator linkage. An engineer testified that General Motors had found that under some "very unique driving conditions," at a temperature of 28-30 degrees during sustained, constant-speed driving, slush and mud could accumulate and freeze around the linkage. These contingencies had not occurred in Mississippi and other southern states, but as a precaution, the bulletin was issued nationally. On the night in question the temperature was about 50 degrees.
Milton Creel testified that the accelerator had stuck twice before the splash shield was installed on May 16, 1966, and that a similar event had occurred later in June or July, 1966. But from then until the accident, about sixteen months, he had no difficulty with the accelerator.
The circuit court was correct in directing a verdict for Carey Chevrolet Company. The evidence did not disclose any connection between Carey Chevrolet and the alleged defect in the accelerator. The Creels never complained to Carey Chevrolet about the accelerator linkage, and the latter never repaired or worked in the area of the accelerator assembly. For more than sixteen months after installation of the splash shield, Creel did not return the automobile to Carey Chevrolet for any work on the accelerator. Milton Creel said that after the splash shield was installed on May 16, 1966, he had no trouble with the accelerator until the accident. There is no evidence that Carey Chevrolet did not properly inspect the automobile before delivery to Creel, and no evidence that Carey Chevrolet failed to install properly the splash shield.
Plaintiff's declaration was based on two theories, negligence and strict products liability, and the case was tried substantially on both theories. However, plaintiff obtained only one instruction on the merits, and it pertained to strict liability. He tacitly abandoned any theory of liability for negligence. One may sue both on strict products liability and also the alternative ground of negligence. Ford Motor Co. v. Cockrell, 211 So.2d 833 (Miss. 1968). In this posture of the case appellant asserts error in the following instruction granted appellee:
The Court instructs the Jury for the defendant, General Motors Corporation, that even if you believe from the evidence presented in this case that the accelerator linkage or transmission control linkage was defective at the time of the accident involved herein, but that such *109 parts became defective through no fault of the defendant after the purchase of the Chevrolet automobile by the plaintiff's father, then it would be your sworn duty to find for the defendant, General Motors Corporation.
Appellant says that the phrase, "through no fault of the defendant," is in conflict with his theory of strict liability and introduces negligence into the case. However, appellant framed his declaration and much of the evidence in terms of both strict liability and negligence. He cannot now be heard to complain of instructions granted General Motors on the latter issue. If appellee had no part in any subsequent defective condition, because of the lapse of time and the relatively high mileage on the car, General Motors could not be held liable for that later-occurring fact. See State Stove Mfg. Co. v. Hodges, 189 So.2d 113 (Miss. 1966). Nor was there error in defendant's instruction No. 4, which told the jury that before it could find for plaintiff it must find that defendant was "guilty of negligence or a breach of duty as defined in other instructions," etc. Defendant had the right to submit both theories to the jury, in view of plaintiff's pleadings and the trial.
Defendant's instruction No. 5 told the jury that as a matter of law the steering assembly and all component parts were not defectively designed, manufactured, or assembled. This was proper, since the evidence was not sufficient to make a jury question on this issue.
Appellant asserts that the trial court erred by interlining the phrase "in its acceleration design" in plaintiff's instruction No. 4, thus limiting plaintiff's products liability claim to accelerator design and excluding the steering assembly. Appellant did not object to modification of the instruction. Moreover, the only issue as to which there was a question of fact was in the accelerator design. And, finally, appellant waived his right to object to the error, even if it were error, by accepting and reading the instruction as modified. Mississippi Pub. Serv. Co. v. Collier, 183 Miss. 271, 183 So. 379 (1938); Williams v. State, 95 Miss. 671, 49 So. 513 (1909).
Defendant's instruction No. 6 stated:
The court instructs the jury for the defendant, General Motors Corporation, that the burden of proof is upon the plaintiff to prove by a preponderance of the evidence in this case that (a) the accelerator linkage or transmission control linkage was defective and such defect, if any, was unreasonably dangerous, (b) the accelerator linkage or transmission control linkage was without substantial change from the time the parts left this defendant's plant until the time of the accident, and (c) that the defective accelerator linkage or transmission control linkage caused or contributed to the accident involved herein and the injuries sustained by the plaintiff; and if the plaintiff has failed to prove the aforesaid elements by a preponderance of the evidence, then it would be your sworn duty to find for the defendant, General Motors Corporation.
There is no error in this instruction. It is in full accord with the prior decisions of this Court, including the doctrine of intervening cause or changed condition. Ford Motor Co. v. Dees, 223 So.2d 638 (Miss. 1969); Ford Motor Co. v. Cockrell, 211 So.2d 833 (Miss. 1968); State Stove Mfg. Co. v. Hodges, 189 So.2d 113 (Miss. 1966); Annot., 13 A.L.R.3d 1057, 1082 (1967).
Defendant obtained an instruction that the mere fact that the accident occurred and plaintiff was injured of itself alone constitutes no evidence of any negligence or breach of other duty by General Motors, and does no raise a presumption that it was due to any act of negligence or other breach of duty. Since this is not a res ipsa loquitur case, this instruction was *110 not error. DeLaughter v. Womack, 250 Miss. 190, 164 So.2d 762 (1964).
Affirmed.
RODGERS, PATTERSON, SMITH and ROBERTSON, JJ., concur.