929 So.2d 958 (2005)
Hoyt FORBES and Hilda Forbes, Appellants
v.
GENERAL MOTORS CORPORATION and Mack Grubbs Motors, Inc., Appellees.
No. 2003-CA-01201-COA.
Court of Appeals of Mississippi.
October 4, 2005.
*960 Wayne Dowdy, Magnolia, attorney for appellants.
Gene D. Berry, Jackson, Paul V. Cassisa, Oxford, attorneys for appellees.
EN BANC.
GRIFFIS, J., for the Court.

MODIFIED OPINION ON MOTION FOR REHEARING
¶ 1. The Forbes' motion for rehearing is denied. The original opinion is withdrawn and this opinion is substituted.
¶ 2. Hilda and Hoyt Forbes appeal a judgment granting a directed verdict in favor of General Motors Corporation ("GM") in a products liability action brought pursuant to the Mississippi Products Liability Act, Mississippi Code Annotated Section 11-1-63 (Rev. 2002). The claim arises from an automobile accident in which the air bag in the 1992 Oldsmobile Delta 88 automobile Hilda Forbes was driving failed to deploy. We find that the circuit court properly granted GM's motion for directed verdict, and we affirm.

FACTS
¶ 3. On December 15, 1997, Hilda Forbes and her three grandchildren were traveling to Columbia, Mississippi, in her 1992 Oldsmobile Delta 88. Mrs. Forbes was driving behind a 1981 Chevrolet Chevette, which suddenly stopped and attempted to turn into a private driveway. Mrs. Forbes struck the Chevette from the rear. Both automobiles were damaged. The air bag in Mrs. Forbes' automobile did not inflate.
¶ 4. As a result of the impact, Mrs. Forbes was propelled forward into the windshield. She suffered a subdural hematoma. Dr. Howard Katz, a specialist in physical medicine, rehabilitation, and spinal cord injuries, testified by deposition that Mrs. Forbes suffered significant cognitive dysfunction and never completely recovered from the injury to her brain.
¶ 5. The air bag system and Mrs. Forbes' automobile were manufactured by GM. The automobile was purchased from Mike Smith Motors, which subsequently was purchased by Mack Grubbs Motors, Inc. Angela Coleman was the driver of the 1981 Chevrolet Chevette.
¶ 6. On December 7, 2000, Hilda and Hoyt Forbes commenced this lawsuit in the Circuit Court of Hinds County, Mississippi. On December 15, 2000, they filed an amended complaint that added GM as a defendant. By agreement of the parties, venue was transferred to the Circuit Court *961 of Marion County, Mississippi, where this case was tried before the Honorable R.I. Prichard, III, and a jury.
¶ 7. The plaintiffs rested their case on the third day of trial. The plaintiffs voluntarily dismissed Angela Coleman. Mack Grubbs Motors, Inc.'s motion for a directed verdict was granted, after the plaintiffs confessed the motion. GM moved for a directed verdict, and the plaintiffs confessed the following portions of the motion:
1. Plaintiffs failed to prove that the air bag deviated in a material way from GM's specifications;
2. Plaintiffs failed to prove that the air bag was defective in design; and
3. Plaintiffs failed to prove that the air bag was defective because it failed to contain adequate warnings.
Judge Prichard then granted the remainder of GM's motion for a directed verdict, finding that the plaintiffs failed to prove that their damages were proximately caused by an unreasonably dangerous and defective condition of the air bag system due to GM's breach of an express warranty or other express factual representation upon which the plaintiffs justifiably relied in using the product.
¶ 8. The plaintiffs present two issues for this Court. First, did the trial court commit reversible error when it granted GM's motion for directed verdict? Next, did the trial court abuse its discretion when it excluded evidence of other accidents?

STANDARD OF REVIEW
¶ 9. A motion for a directed verdict is authorized under Rule 50(a) of the Mississippi Rules of Civil Procedure. "The rule enables the court to determine whether there is any question of fact to be submitted to the jury and whether any verdict other than the one directed would be erroneous as a matter of law; it is conceived as a device to save the time and trouble involved in a lengthy jury determination." M.R.C.P. 50 cmt. A motion for directed verdict "tests the legal sufficiency of the plaintiffs' evidence. The Circuit Courtand this Court on appealare required to consider the evidence in the light most favorable to the plaintiffs . . ., giving those plaintiffs the benefit of all favorable inferences that may reasonably be drawn from the evidence. Unless the evidence is so lacking that no reasonable jury could find for plaintiffs, the motion must be denied." Bankston v. Pass Road Tire Center, Inc., 611 So.2d 998, 1003 (Miss.1992). A directed verdict is proper where the plaintiff fails to make a prima facie showing of the elements of his claim. Id. We review a judgment granting a directed verdict de novo. Fulton v. Robinson Indus., Inc., 664 So.2d 170, 172 (Miss.1995).

ANALYSIS

I. Did the trial court commit reversible error when it granted GM's motion for directed verdict?
¶ 10. Mr. and Mrs. Forbes' claim against GM is based on the Mississippi Products Liability Act, codified at Mississippi Code Annotated Section 11-1-63 (Rev.2002),[1] which provides:
In any action for damages caused by a product except for commercial damage to the product itself:
(a) The manufacturer or seller of the product shall not be liable if the claimant does not prove by the preponderance of the evidence that at the time *962 the product left the control of the manufacturer or seller:
(i) 1. The product was defective because it deviated in a material way from the manufacturer's specifications or from otherwise identical units manufactured to the same manufacturing specifications, or
2. The product was defective because it failed to contain adequate warnings or instructions, or
3. The product was designed in a defective manner, or
4. The product breached an express warranty or failed to conform to other express factual representations upon which the claimant justifiably relied in electing to use the product; and
(ii) The defective condition rendered the product unreasonably dangerous to the user or consumer; and
(iii) The defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sought.
¶ 11. To prevail based on the theory of breach of express warranty, Mr. and Mrs. Forbes argue that they must prove by a preponderance of the evidence that at the time the air bag left GM's control:
A. The product breached an express warranty or failed to conform to other express factual representations upon which the claimant justifiably relied in electing to use the product; and (Miss.Code Ann. § 11-1-63(a)(i)(4))
B. The defective condition rendered the product unreasonably dangerous to the user or consumer; and (Miss.Code Ann. § 11-1-63(a)(ii))
C. The defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sought. (Miss. Code Ann. § 11-1-63(a)(iii)).
We will discuss these issues in a similar order.
A. Did the plaintiffs prove that the air bag breached an express warranty or failed to conform to other express factual representations upon which the claimant justifiably relied in electing to use the product?
¶ 12. To articulate the appellants' argument, we quote the portion of their brief that describes the basis for their claim that the air bag breached an express warranty or failed to conform to other express factual representations upon which they justifiably relied in using the product.
When Mr. Forbes began searching for an automobile to purchase, he already knew that he wanted an automobile with an air bag. Mr. Forbes felt that the air bag was an important safety feature for any car, and he wanted something to protect Mrs. Forbes in the case of an accident. Mr. Forbes was aware that one of the special features of the 1992 Oldsmobile Delta 88 was an air bag. Mr. Forbes was familiar with General Motors' representation that its air bag in the 1992 Oldsmobile Delta 88 would inflate in a fraction of a second when the automobile was involved in a frontal collision and the collision was "hard enough". Mr. Forbes purchased the 1992 Oldsmobile Delta 88, and he paid additional money to have the automobile equipped with an air bag.
Mr. Forbes was assured by General Motors' representation in its owner's manual that the 1992 Oldsmobile Delta 88 that he purchased was equipped with an air bag that would inflate as warranted. Mr. and Mrs. Forbes believed that an air bag would restrain Mrs. Forbes and protect Mrs. Forbes during an accident. *963 However, when Mrs. Forbes was involved in an accident on December 15, 1997 while driving the Oldsmobile Delta 88, the air bag did not inflate.
According to the General Motors' owner's manual for the 1992 Oldsmobile Delta 88 that was issued to Mr. and Mrs. Forbes, the 1992 Oldsmobile Delta 88 is equipped with an air bag or "Supplemental Inflatable Restraint System (SIR)". In the owner's manual for the 1992 Oldsmobile Delta 88, General Motors describes the SIR System as follows:
How the SIR System Works
The "air bag" part of the SIR system is in the middle of the steering wheel. The SIR system is only for crashes where the front area of your vehicle hits something. If the collision is hard enough, the "air bag" inflates in a fraction of a second. It helps restrain the driver, and then it quickly deflates. Some gray "smoke" is normal when this happens, and some people have reported mild coughing and watery eyes from it. But all of these have been temporary. The "air bag" can give extra protection for the driver's upper body.
¶ 13. Our review of the record reveals that the appellants' recitation of the evidence is not entirely accurate. We, just as the trial court, must first identify the "express warranty" or "express factual representations" that were relied upon. Miss. Code Ann. § 11-1-63(a)(i)(4)(Supp.2004).
¶ 14. The plaintiffs claim that Mr. Forbes was assured by GM's "representation that its air bag in the 1992 Oldsmobile Delta 88 would inflate in a fraction of a second when the automobile was involved in a frontal collision and the collision was `hard enough'. (Ex. 2, page 29 of owner's manual)." This statement is incorrect for two reasons.
¶ 15. First, the evidence in the record does not support the statement that GM's representatives made these statements. Mr. Forbes testified:
Q. Now, this automobile that is the 1992 Oldsmobile made by General Motors?
A. Yes, sir.
Q. Do you remember going to buy that?
A. Yes, sir.
Q. And did the automobile contain an air bag system?
A. It was told to me that it did.
Q. And was that important to you?
A. Yes, sir. I went to various lengths to have an automobile with an air bag in it and a seat belt that would work in case my wife needed it, if it ever come to an accident or something. And the salesman out there, he stressed to me that it was very important to have a seat belt and an air bag in that car. And so we paid extra money to get an air bag. We wanted an air bag. We hopefully had one, but I've never seen it.
¶ 16. The trial court correctly noted that these statements were made by representatives of Mike Smith Motors and not by representatives of GM. Accepting that these statements were by GM's representatives, the only "express warranty" or "express factual representations" from this testimony was that the automobile had an air bag. The plaintiffs presented no evidence that the 1992 Oldsmobile Delta 88 automobile did not in fact have an operational air bag system. Thus, there was no evidence that these statements to Mr. Forbes would support the jury's finding that GM "breached an express warranty or failed to conform to other express factual representations upon which the claimant *964 justifiably relied in electing to use the product." Miss.Code Ann. § 11-1-63(a)(i)(4)(Supp.2004).
¶ 17. Second, the plaintiffs point to the owner's manual as the source of the "express warranty" or "express factual representation" that the air bag would "inflate in a fraction of a second when the automobile was involved in a frontal collision and the collision was `hard enough.' (Ex. 2, page 29 of owner's manual)." The problem with this argument is the absence of evidence that Mr. or Mrs. Forbes "justifiably relied [on this] in electing to use the product." Miss.Code Ann. § 11-1-63(a)(i)(4)(Supp.2004).
¶ 18. Neither Mr. nor Mrs. Forbes testified that they ever read or relied on the owner's manual, or the statement in the owner's manual about the air bag, before they purchased the automobile or before her accident. Thus, we must consider whether a person may justifiably rely on an express warranty or express factual representation that they never read. Our consideration is guided by the recent supreme court decision in Palmer v. Volkswagen of America, Inc., 904 So.2d 1077 (Miss.2005). In Palmer, the supreme court held that "[t]he presence or absence of anything in an unread owner's manual simply cannot proximately cause a plaintiff's damages." Id. at (¶ 21). Although Palmer dealt with an inadequate warning/failure to warn case, it may also stand for the proposition that a person cannot justifiably rely on something they never read. The supreme court held that "this case does not involve plaintiffs who were misled by the manual. The plaintiffs in this case did not read the manual at all. Thus, they hardly can claim to have been harmed or misled by it." Id. at (¶ 22). Similarly, Mr. and Mrs. Forbes cannot complain that this section of the owner's manual was the "express warranty or ... other express factual representations upon which the claimant justifiably relied in electing to use the product." Miss.Code Ann. § 11-1-63(a)(i)(4)(Supp.2004).
¶ 19. Indeed, there was no evidence that either Mr. or Mrs. Forbes relied on any express warranty or other factual representation by GM about the air bag before this accident. Id. See Fitzner Pontiac-Buick Cadillac, Inc. v. Smith, 523 So.2d 324, 327 (Miss.1988)(UCC case; no breach of express warranty where there was no reliance); Austin v. Will-Burt Co., 232 F.Supp.2d 682, 687 (N.D.Miss.2002)(summary judgment granted on express warranty claim where no proof of reliance).
¶ 20. We note that the appellants cite no case authority to support their arguments. Instead, they argue that there was sufficient evidence presented to prove that the collision was "hard enough" to inflate an air bag by presenting testimony from Danny Alexander, Major John Wayne Tolar and Jim Pachmeyer.
¶ 21. Danny Alexander was the owner of the 1981 Chevrolet Chevette that was involved in the accident. He was riding as a passenger in the Chevette at the time of the accident. He testified that the collision broke the passenger's seat in the Chevette and threw him into the trunk. An ambulance removed him from the Chevette, and he was hospitalized.
¶ 22. Major John Wayne Tolar, of the Columbia Police Department, was at the scene of the accident. He testified that he had been Chief of Detectives for 24 years and had investigated numerous accidents. He viewed both automobiles involved in the accident and testified that the Chevette was broken down to the rear back seat. He also testified that there was a "pretty good impact" between the automobiles. He thought "it was just unusual to *965 me that this type of accident with this type of damage would have not deployed her air bags or her seat belts would not have kept her from hitting the windshield. I thought that was very unusual."
¶ 23. Jim Pachmeyer, an employee at Houston Watts Body Shop and Repair Service, testified that he removed the Forbes' automobile from the scene of the accident. He gave a detailed description of the damage sustained and the repairs that were made to the automobile. He testified that the air bag was not inflated. He replaced the hood and hood hinges, the front bumper assembly and its components, the right front impact absorber, the grill, the grill panel and its components, the front body radiator support, the freon and coolant, the front body vertical support, the windshield, the left front door, and the right quarter panel. The total cost of the repairs was $5,806.43. He testified that there were two air bag sensors on the 1992 Oldsmobile Delta 88, one mounted on the right of the radiator support and one on the left radiator support. Both air bag sensors were still connected, and the air bag did not deploy.
¶ 24. The appellants argue, and the dissent agrees, that this testimony establishes that the collision was "hard enough" to inflate the air bag. We, just as Judge Prichard, find nothing in this testimony that would establish that the air bag "breached an express warranty or failed to conform to other express factual representations upon which the claimant justifiably relied in electing to use the product." Miss.Code Ann. § 11-1-63(a)(i)(4)(Supp.2004). The appellants offered no other evidence that would support a finding that the air bag did not perform as it was designed to perform. There is no evidence for us or a jury to conclude that the air bag did not perform as it was supposed to perform.
¶ 25. The appellants and the dissent argue that the central question in this case is  How hard is "hard enough?" To answer this question, a person must have scientific, technical or other specialized knowledge of air bags and their proper operation. Indeed, such person should have knowledge, skill, experience, training or education about the reliable principles and methods that are part of the air bag mechanism that was in Mrs. Forbes' automobile. Here, the trial judge correctly concluded that such knowledge required expert testimony to determine whether the collision was indeed "hard enough." It is obvious that the trial judge believed that this question could not be answered with testimony within common knowledge and understanding of a lay witness or lay juror.
¶ 26. The appellants offered no expert witnesses to explain the technical operation of the air bag. More importantly, the appellants offered no expert testimony to say that the air bag should have deployed in Mrs. Forbes' collision. The trial judge noted that there were several GM engineers in the courtroom who probably could have answered that question.[2] However, *966 the plaintiffs did not call these engineers as adverse witnesses and did not offer their own expert witnesses. Indeed, there was a lack of expert testimony on the crucial issues  what were the technical parameters for the proper operation or deployment of the air bag, what speeds were involved in the impact, how the air bag was intended to deploy in circumstances comparable to those present in Mrs. Forbes' accident, and how Mrs. Forbes' enhanced injuries were not caused by factors other than the non-deployment of the air bag.
¶ 27. The dissent would rely on the testimony of three individuals who have no training, knowledge or expertise in the product and its operation. The evidence that supports the dissent's view is that a police officer and a body shop employee believe that the air bag should have deployed. Only speculation and conjecture allows one to reach such conclusion.
¶ 28. A similar case was considered in St. Clair v. General Motors Corp., 10 F.Supp.2d 523 (M.D.N.C.1998). The federal court granted summary judgment to GM after the plaintiff's 1991 Cadillac DeVille was involved in a collision and the air bag failed to deploy. Id. at 526. The basis for the motion was that the plaintiff could not prove his case without expert testimony. Id. at 531. The plaintiff offered only physical evidence of the accident report, which established the speed the plaintiff's vehicle was traveling at the time of the accident, the speed of the other vehicle involved, the length of skid marks left on the pavement, and that the cost of repair of the plaintiff's vehicle was $3,000. Id. at 532. The court ruled that "plaintiffs must offer `legal evidence tending to establish beyond a mere speculation or conjecture every essential element' of their claims." Id. (citing Jackson v. Neill McKay Gin Co., 255 N.C. 194, 120 S.E.2d 540, 542 (1961)). The court then recognized the importance of the absence of testimony that could establish that the "air bag should have deployed during the accident." St. Clair, 10 F.Supp.2d at 532.
¶ 29. We find that the trial judge properly considered this issue. Thus, GM's motion for directed verdict was properly granted. With this decided, there is no need to go further. However, to ensure a complete analysis of these issues, we will discuss the other issues raised.

B. Did the plaintiffs prove that the air bag was defective or unreasonably dangerous to consumers?
¶ 30. The appellants offer a very brief argument on this issue. Their briefs offer no case citations or other legal authorities.
¶ 31. Their argument is that the air bag was defective or unreasonably dangerous because it did not deploy upon impact. They again refer to the language in the owner's manual that states that the air bag will deploy "if the collision is hard enough."
¶ 32. The appellants called George Green as their expert witness to testify about the condition of the air bag system. However, Mr. Green admitted that he was *967 not an expert in the design and testing of air bags. He did not know whether the head injury criteria that a driver would experience would be higher in this car if the driver's head hit the windshield or the powerful air bag was deployed. Thus, Mr. Green could not say whether the failure of the air bag to deploy was defective or unreasonably dangerous to Mrs. Forbes. Mr. Green's testimony did not provide any evidence about the impact of the accident and what constitutes "hard enough" to deploy the air bag. Nevertheless, the dissent is willing to assume, through utter speculation, that the air bag did not operate properly. There is simply no evidence that supports such conclusion.
¶ 33. In granting GM's motion for directed verdict, the trial judge stated:
The plaintiffs have had since 1997 . . . to submit this [case] to a qualified expert, who in the Court's opinion should have made a determination of why the air bag didn't deploy, exactly what forces were applied to the vehicle, to give an interpretation of that warranty under the standards in the industry. And show that that warranty was breached and how. And that is the burden the Court finds is on the plaintiffs in this case. And they have not ruled out other failures that the air bag could have sustained such as improper maintenance or other defects in electrical or otherwise to determine that the air bag did not meet an express warranty or a warranty upon which the claimant justifiably relied on the factual representation.
¶ 34. It is undisputed that Mrs. Forbes suffered severe and tragic injuries as a result of this automobile accident. The fact that Mrs. Forbes was injured in an automobile accident, however, is not proof of a defective product. In Farris v. Coleman Co., 121 F.Supp.2d 1014, 1018 (N.D.Miss.2000), the court noted that "[t]he Mississippi Supreme Court has not permitted recovery on mere proof that damage occurred following the use of the product."
¶ 35. The appellants offered no expert testimony that the air bag was defective or unreasonably dangerous when it left GM. Thus, we find that the appellants failed to meet their burden of proof under the Mississippi Products Liability Act. Miss.Code Ann. § 11-1-63(a)(ii)(Supp.2004); see Childs v. General Motors Corp., 73 F.Supp.2d 669, 671 (N.D.Miss.1999)(summary judgment granted on door latch claim where plaintiff offered no expert testimony of a defect in the door latch).

C. Did the plaintiffs prove that their damages were proximately caused by a breach of an express warranty?
¶ 36. The appellants offer only one paragraph of argument on this issue. Again, they offer no case citations or other authorities.
¶ 37. Their argument is that they presented evidence that the failure of the air bag to inflate caused Mrs. Forbes to strike the windshield. To comply with this part of the statute, the appellants must establish that "[t]he defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sought." Miss.Code Ann. § 11-1-63(a)(iii)(Supp.2004).
¶ 38. The appellants argue that the testimony of John Blunchi, an expert in the field of accident reconstruction, testified that had the air bags inflated then Mrs. Forbes would not have struck the windshield. GM argues that the appellants called two physicians to testify at trial. Neither physician testified that Mrs. Forbes' injuries were proximately caused by the failure of the air bag to deploy nor did they relate her injuries to GM's alleged *968 breach of an express warranty. The appellants introduced no evidence to differentiate the injuries that Mrs. Forbes sustained in this accident that nobody claimed GM caused from those injuries that Mrs. Forbes would have sustained if the air bag had deployed in this accident.
¶ 39. Proximate causation is a necessary element in a products liability action. Miss.Code Ann. § 11-1-63(a)(iii) (Rev.2002). The plaintiff must show a causal link between the defect and the resulting injury. Id. "When dealing with an express warranty, it is the burden of the plaintiff to prove the defect in the product or service caused the damage." Easley v. Day Motors, Inc., 796 So.2d 236, 241(¶ 13) (Miss.Ct.App.2001) (citations omitted). Since there was no proof of proximate causation, the Forbes failed to meet their burden as required by Mississippi Code Annotated Section 11-1-63(a)(iii).
¶ 40. Proof of damage following the use of a product is not sufficient to establish liability. Creel v. General Motors, Inc., 233 So.2d 105, 109-10 (Miss. 1970); Powe v. Wagner Elec. Sales Corp., 589 F.Supp. 657, 661 (S.D.Miss.1984). "Manufacturers are not insurers and are under no duty to design a crashworthy, accident-proof or foolproof vehicle." Cooper v. General Motors, Inc., 702 So.2d 428, 442(¶ 45) (Miss.1997). Here, the appellants failed to prove that "[t]he defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sought." Miss. Code Ann. § 11-1-63(a)(iii)(Supp.2004).

II. Did the trial court err in excluding from evidence photographs of other GM automobiles whose air bags inflated?
¶ 41. The Forbes next argue that the trial court erred in excluding from evidence photographs of other GM vehicles that had been involved in accidents. The standard of review regarding the admission or exclusion of evidence is abuse of discretion. Yoste v. Wal-Mart Stores, Inc., 822 So.2d 935, 936(¶ 7) (Miss.2002) (citation omitted).
¶ 42. The Forbes sought to admit photographs of a Chevrolet Impala and a Pontiac Grand Prix. Jim Pachmyer testified that the parts on the Chevrolet Impala and Pontiac Grand Prix that were damaged were the same parts that were damaged on the Delta 88. Therefore, the Forbes contend that the admission of the photographs of these automobiles was related to the issue of whether the collision was hard enough to inflate the air bag in the Forbes' Delta 88.
¶ 43. GM counters that the Forbes failed to offer the proof necessary to introduce evidence of other accidents and failed to cite any case authority to support a reversal of the trial court on this issue. GM quotes Hageney v. Jackson Furniture of Danville, 746 So.2d 912, 922(¶ 37) (Miss. Ct.App.1999) that "[t]o be probative of a design and/or manufacturing defect, evidence must show that the similar accidents occurred under substantially similar circumstances and involved substantially similar components."
¶ 44. A review of the record reveals that the parts damaged on the Chevrolet Impala and Pontiac Grand Prix were the same parts that were damaged on the Delta 88, but the conditions were different. The driver of the Impala ran off the road and hit a bluff, and the driver of the Grand Prix struck another car in the side. "When evidence of other accidents or occurrences is offered for any purpose other than to show notice, the proponent of that evidence must show that the facts and circumstances of the other accidents or *969 occurrences are `closely similar' to the facts and circumstances at issue." Johnson v. Ford Motor Co., 988 F.2d 573, 579 (5th Cir.1993). We find that the Forbes did not offer any proof that the other accidents occurred under closely similar conditions. Therefore, we hold that the trial judge did not abuse his discretion by denying the admission of the photos.
¶ 45. Upon review, we find that the trial court's decision to grant GM's motion for directed verdict should be affirmed.
¶ 46. THE JUDGMENT OF THE CIRCUIT COURT OF MARION COUNTY GRANTING GENERAL MOTORS CORPORATION'S MOTION FOR DIRECTED VERDICT IS HEREBY AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
MYERS, CHANDLER, BARNES AND ISHEE, JJ., CONCUR. IRVING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, C.J., BRIDGES AND LEE, P.JJ.
IRVING, J., Dissenting:
¶ 47. The majority, without citing any authority, agrees with the trial judge, who also failed to cite any authority, that expert testimony was required to prove a prima facie case that the collision in which Mrs. Forbes was involved was hard enough to cause the air bags in her 1992 Oldsmobile to inflate. Also, the majority, citing Palmer v. Volkswagen of America, Inc., 904 So.2d 1077 (Miss.2005), finds that Mr. and Mrs. Forbes failed to prove reliance upon an express factual representation by GM because they did not read, prior to purchasing the vehicle, the following factual representation contained in the owner's manual and upon which their claim was brought:
The air bag part of the SIR system is in the middle of the steering wheel. The SIR system is only for crashes where the front area of your vehicle hits something. If the collision is hard enough, the "air bag" inflates in a fraction of a second. It helps restrain the driver, and then it quickly deflates. Some gray smoke is normal when this happens, and some people have reported mild coughing and watery eyes from it. But all these have been temporary. The air bag can give extra protection for the driver's upper body.
¶ 48. I believe the majority errs in both findings; therefore, I respectfully dissent.[3] However, before delving into the substantive part of my dissent, I find it necessary to briefly relate the facts illuminating the intensity of the rear-end collision.
¶ 49. On December 15, 1997, Hilda Forbes and her three grandchildren were traveling to Columbia, Mississippi, in the Forbeses's 1992 Oldsmobile Delta 88. Mrs. Forbes was driving behind a 1981 Chevrolet Chevette, which suddenly stopped and attempted to turn into a private driveway. Mrs. Forbes struck the Chevette from the rear, causing extensive damage to both her vehicle and the Chevrolet Chevette. The front portion of the Forbeses's vehicle was severely damaged, and the seat supports in the Chevette were broken. The Forbeses's vehicle air bag did not inflate even though the radiator support, on which one of the air bag sensors was located, was crushed. Additional damage to the Forbeses's vehicle required the replacement of the following items: the front bumper assembly, the right front *970 impact absorber, the grill and grill panel assembly, the front body radiator support, the front body vertical support, the windshield, the left front door shell, and the right quarter outer panel.
¶ 50. As a result of the impact, Mrs. Forbes was propelled forward into the windshield. She suffered a subdural hematoma. Dr. Howard Katz, a specialist in physical medicine, rehabilitation, and spinal cord injuries testified by deposition that Mrs. Forbes suffered significant cognitive dysfunction and had never completely recovered from the injury to her brain.
¶ 51. The majority finds that the Forbeses failed to prove that the air bag breached an express warranty or failed to conform to other express factual representations upon which they justifiably relied. In arriving at this decision, the majority states that the Forbeses's claim that they were assured by GM's "representation that its air bag in the 1992 Oldsmobile Delta 88 would inflate in a fraction of a second when the automobile was involved in a frontal collision and the collision was `hard enough.'" However, the majority asserts that this statement is incorrect for two reasons. The first reason is that "the evidence in the record does not support the statement that GM representatives made these statements," and the second reason is that the Forbeses, prior to purchasing the vehicle, never read the statement in the owner's manual concerning the air bag. I turn to a discussion of the first reason offered by the majority.
¶ 52. The majority has correctly quoted the essence of the Forbeses's claim but has mischaracterized it. The Forbeses do not claim that any GM representative told them anything about an air bag, and the majority's lengthy quote from the Forbeses's brief does not support the majority's implicit assertion that the Forbeses claim that Mr. Forbes was assured by GM's representatives that the air bag would inflate if the collision was hard enough. Apparently, the majority has confused "representation" with "representatives". What the Forbeses claim is that GM, with the insertion of the information in its owner's manuals regarding how the air bags work, made an express factual representation that the air bag would inflate in a fraction of a second if the collision was hard enough. This statement is in fact contained in the owner's manual.
¶ 53. I now turn to the second reason offered by the majority as an explanation of why the Forbeses cannot prevail. As already stated, the majority, relying upon Palmer, finds that the Forbeses "cannot justifiably rely on something that they never read" and that they "cannot complain that this section of the owner's manual was the `express warranty or ... other express factual representations upon which [they] justifiably relied in electing to use the product.'"
¶ 54. I believe the majority's reliance upon Palmer is misplaced. In Palmer, the issue was failure to warn; whereas, here, the issue is not failure to warn, but failure to perform in accordance with a factual representation. Moreover, the Forbeses do not claim to have been harmed or misled by anything contained in the owner's manual, nor do they claim that the uninflated air bag, outside of the collision context, was unreasonably dangerous. Further, the Forbeses do not claim that they were misled into purchasing the vehicle or that Mrs. Forbes was injured because GM failed to warn her about how to use a vehicle equipped with an air bag.
¶ 55. The Forbeses simply contend that during the collision the air bag failed to conform to the representation that it would inflate in a fraction of a second if the collision was hard enough and that they produced sufficient evidence to prove that *971 the air bag failed to conform. As a result of the failure of the air bag to deploy, the Forbeses further contend that GM is liable under Mississippi Code Annotated section 11-1-63(a)(i)(4)(ii)(iii) (Supp.2004). To aid in clarity, I quote section (a) in its entirety although the Forbeses rely only upon (a)(i)(4)(ii)(iii). Section (a) reads:
(a) The manufacturer or seller of [a] product shall not be liable if the claimant does not prove by a preponderance of the evidence that at the time the product left the control of the manufacturer or seller:
(i)1. The product was defective because it deviated in a material way from the manufacturer's specifications or from otherwise identical units manufactured to the same manufacturing specifications, or
2. The product was defective because it failed to contain adequate warnings or instructions, or
3. The product was designed in a defective manner, or
4. The product breached an express warranty or failed to conform to other express factual representations upon which the claimant justifiably relied in electing to use the product; and
(ii) The defective condition rendered the product unreasonably dangerous to the user or consumer; and
(iii) The defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sought.
Miss.Code Ann. § 11-1-63(a) 4(ii)(iii) (Supp.2004).
¶ 56. It seems to me that under Mississippi's Product Liability Act (Mississippi Code Annotated section 11-1-63 (Supp. 2004)), a claimant may file a claim under sections (a)(i)1, 2, 3, or 4. However, if the claimant pursues his claim under (a)(i)4, he must also prove (ii) and (iii), that is, that the defective condition rendered the product unreasonably dangerous to the user or consumer; and the defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sought. Literally applying the quoted law to the facts of this case can be confusing since there is the requirement of proving that the air bag was unreasonably dangerous to Mrs. Forbes, the user, when in fact she never used the air bag, nor was it designed to be used by her. Nevertheless, I now embark upon that task.

1. Did the Forbeses rely upon GM's factual representation?
¶ 57. Returning to the issue of reliance, I do not believe that it is fatal to the Forbeses's case that they may not have literally read the factual representation in the owner's manual provided they were aware of what was being represented in the manual and that representation played a role in their decision to purchase the vehicle. Mr. Forbes testified that he "went to great lengths to have an automobile with an air bag in it and a seat belt that would work in case my wife needed it, if it ever come [sic] to an accident or something." He also testified that "we paid extra money to get an air bag. We wanted an air bag." The customary practice is that a customer gets the owner's manual after purchase of the vehicle, but the features of the vehicle are usually explained to the customer, prior to purchase, by the salesman who is thoroughly familiar with the representations contained in the owner's manual.
¶ 58. In this case, Mr. Forbes was adamant that he wanted a car with an air bag. Based on Mr. Forbes's testimony, a reasonable inference may be drawn that he would not have purchased the car had it not been equipped with an air bag that *972 would deploy under the appropriate circumstances, even though he may not have actually read the representation in the owner's manual regarding the air bag until after he purchased the vehicle. Likewise, it is clear from his testimony that, in purchasing the vehicle, he relied upon the fact that the air bag was supposed to deploy in the case of an accident because he said he wanted an air bag that would "work in case my wife needed it, if it ever come [sic] to an accident or something." I find that the Forbeses presented a prima facie case on the issue of reliance.

2. Was there competent evidence that the collision was hard enough?
¶ 59. As already observed in this dissent, GM states in its owner's manual that the air bag will inflate when the front area of the vehicle is involved in a crash if the collision is hard enough. GM, without citing any authority, argues that proof  that the collision was hard enough for the air bag to inflate  must be made through expert testimony. On the other hand, the Forbeses argue that they presented a prima facie case that the collision was hard enough to cause a proper functioning air bag to inflate.
¶ 60. In its owner's manual, GM does not define or qualify the phrase, "hard enough." Nevertheless, GM insists that the Forbeses should have presented expert testimony to ascertain how hard is "hard enough." The majority embraces this argument, asserting that the Forbeses presented no authority to support their argument that they presented sufficient evidence to prove that the collision was "hard enough" to inflate the air bag.
¶ 61. The Forbeses presented the testimony of Danny Alexander, Officer Tolar, and Jim Pachmyer to establish that the collision between the Forbeses' Delta 88 and the Chevrolet Chevette was hard enough to inflate the air bag. Danny Alexander, owner of the Chevrolet Chevette, was in the front seat of the Chevette on the passenger's side when the accident occurred. Danny testified that the impact of the accident broke the seat and knocked him into the trunk of the car and that the paramedics had to remove him from the car.
¶ 62. Officer John Wayne Tolar, chief of detectives with the Columbia Police Department, was at the scene of the accident. Mr. Tolar testified that the front passenger seat of the Chevette was broken down to the rear back seat. Mr. Tolar further testified that he saw Mrs. Forbes' hair just above the steering wheel in the Forbeses's Delta 88. Mr. Tolar also testified that he thought that it was unusual that the air bag did not inflate in an accident such as this one.
¶ 63. Jim Pachmyer, an employee of Houston Watts Body Shop and Repair Service, testified that he towed the Delta 88 to Houston Watts Body Shop. Mr. Pachmyer further testified that the whole front bumper assembly, front cover, and front bumper were replaced. The front bumper assembly includes moldings, front reinforcement bars and support braces. The front bumper impact absorber, had to be replaced. The grill assembly and the header panel system were destroyed from the impact. However, Mr. Pachmyer acknowledged that these items were made of fiberglass and were designed to shatter upon impact. Additionally, the headlight assembly was destroyed. The hood and hood panel, the panel that comes across the front of the car between the fenders, had to be replaced.
¶ 64. After giving the aforementioned testimony, the following colloquy occurred between the Forbeses's counsel and Mr. Pachmyer:

*973 Q. But were there two sensors in the Forbes' car?
A. Sir, I don't remember that. It's a positive fact.
Q. And whether it was one or two, the air bag sensor was on what we're talking about?
A. Yes, sir.
Q. The radiator support.
A. Yes, sir.
Q. And you had to replace the radiator support?
A. Yes, sir.
Q. Why did you have to replace the radiator support?
A. It was drove [sic] back from impact, sir. It was bent, I don't remember the exact dimensions, but we'll say four to six inches.
Q. And being a support tell the jury what material that was made of?
A. The radiator support is made of metal, sir. I don't know just what gauge metal that is, but it's metal support that comes from  goes all the way across the front end of your car. And they are pretty stout things. You don't bend them by just leaning up aside them or something of that nature.
Q. And what you've described as pretty stout, am I understanding your testimony and based upon your best recollection it was, as you said, drove back four to six inches.
A. Yes, sir.
Q. Do you remember about whether it would be one sensor or two sensors, were they still connected to that radiator support?
A. Yes, sir.
Finally, Mr. Pachmyer also testified that there was approximately $5,800 of damage to the Delta 88.
¶ 65. Based on this evidence, I find that the Forbes at least presented a prima facie case that the impact was hard enough to cause the air bags to inflate. GM should have been required to go forward with its case to refute this evidence, if indeed it could have.
¶ 66. The majority cites St. Clair v. General Motors Corp., 10 F.Supp.2d 523 (M.D.N.C.1998) for the proposition that expert testimony is required to prove that a collision or impact is hard enough to cause an air bag to inflate. St. Clair is clearly distinguishable from our case. The only similarity that St. Clair has with our case is the failure of the air bag to inflate. The theory of recovery was totally different from the theory or recovery in our case. In St. Clair, the plaintiff sued General Motors Corporation, asserting a claim for negligence in the design and manufacture of the air bag system in his car. Id. at 526. An order was entered requiring the parties to identify their experts by a certain date. Plaintiff failed to comply with the order. Id. at 527. General Motors filed a motion for summary judgment, alleging that, in the absence of expert testimony, the plaintiff could not establish his claims of negligence in the design and manufacture of the air bag system in his car. Id. As a part of the documentation in support of its motion for summary judgment, General Motors "produced the testimony of its expert witness, Keith S. Schultz, an engineer familiar with the design and performance of the air bag system in [plaintiff's vehicle]. . . . In Schultz's opinion, [p]laintiff's accident ... did not meet the criteria for triggering the air bag such that the system was in fact operating properly by not deploying during the accident." Id. at 532. Plaintiff produced no expert testimony to rebut Schultz's testimony.
*974 ¶ 67. As I have previously noted in this dissent, the Forbeses's theory of recovery was not based on defective design and manufacture of the air bag, but failure to conform to an express factual representation. Moreover, when GM's motion for a directed verdict was made and granted, no expert had testified that the collision was not hard enough to trigger the deployment of the air bag.
¶ 68. I find it very interesting that both the majority and the trial court took note of the fact that GM had engineers in the courtroom who probably could have answered the question as to whether the collision was hard enough to cause the air bag to inflate. The Forbeses are faulted for not calling these engineers. Well, it seems indeed strange that GM would have engineers ready to refute the Forbeses's case and not put them on to testify, resting instead on the dubious notion, without the benefit of any precedent, that the Forbeses were required to prove, by expert testimony, their contention that the collision was hard enough to cause the air bag to inflate.

2. Was the air bag unreasonably dangerous?
¶ 69. GM contends that the Forbeses did not introduce any expert testimony that the air bag system was defective and unreasonably dangerous to users at the time it left GM; therefore, the Forbeses did not meet their burden of proof under the Mississippi Products Liability Act, Mississippi Code Annotated section 11-1-63(a)(4)(ii) (Supp.2004). General Motors explains that since the Forbeses's expert, George Green, admitted that he was not an expert in the design and testing of air bags, there was not sufficient expert testimony to prove that the air bag was unreasonably dangerous.
¶ 70. It seems quite obvious that an air bag which fails to inflate or deploy when it is suppose to is unreasonably dangerous not because it will cause injury, but because of its failure to operate so as to prevent injury. Therefore, proof that the collision was hard enough to activate deployment of an air bag that did not deploy is proof that the air bag was defective and unreasonably dangerous at the time that it left the manufacture unless there is other evidence indicating that the air bag had not been properly maintained or had been tampered with since leaving the manufacture. No such evidence of tampering or lack of maintenance was presented.
¶ 71. Further, Mr. Green, testified that an air bag should always deploy when a person is "thrown off the seat forward far enough to hit the windshield, that deceleration alone should always activate an air bag."

3. Did the failure of the air bag to inflate proximately cause Mrs. Forbes's injuries?
¶ 72. GM, citing Dawson v. Wal-Mart Stores, Inc., 781 F.Supp. 1166, 1170 (N.D.Miss.1992), asserts that "[w]hether [plaintiff's] action sounds in warranty or in tort, [he] must still prove that the defect in the product caused the damage of which [he] complained." GM maintains that the Forbeses failed to meet their burden of proving that their damages were proximately caused by the alleged breach of an express warranty by GM. GM explains that the Forbeses called two physicians at trial by deposition, Dr. Michael Molleston, a board certified neurosurgeon, and Dr. Howard Katz, a board certified physician in physical medicine, rehabilitation and spinal cord injury. GM contends that both physicians testified that Mrs. Forbes was injured in this accident, but neither opined *975 that her injuries were caused because the air bag did not deploy.[4]
¶ 73. The Forbeses argue that it was evident from the testimony of John Blunchi, one of their expert witnesses, that Mrs. Forbes's injuries were a direct and proximate cause of the failure of the air bag to inflate. Mr. Blunchi, expert in the field of accident reconstruction, testified that  based on his investigation, reconstruction of Mrs. Forbes's accident, and experience involving investigation and reconstruction of accidents  had the air bag in the Delta 88 inflated Mrs. Forbes would not have struck the windshield. Again, I find that this testimony was sufficient to establish a prima facie case that the failure of the air bag to inflate proximately caused Mrs. Forbes's damages.
¶ 74. The trial judge granted GM's motion, made at the conclusion of the Forbeses's case, for a directed verdict. The trial judge determined that expert testimony was required to demonstrate that the collision was hard enough for the air bags to deploy. I find that the evidence presented by the Forbeses was sufficient to require GM to go forward and rebut what was presented. In other words, I find that the Forbeses at least presented a prima facie case. In the absence of some authority holding that expert testimony is always required, as a matter of law, to prove that a collision is hard enough to activate air bags, I would decline to establish such a standard of proof in cases involving the failure of air bags to deploy. Apparently, the majority has no problem doing so, for it offers no basis for its holding on this point other than it said so.
¶ 75. Although, I realize that there are certainly some cases where expert testimony is required to establish even a prima facie case of liability, I do not believe cases involving the failure of the deployment of air bags are among such cases. To illustrate my point, suppose Mrs. Forbes, instead of striking the Chevette in the rear, had run headlong into an immovable brick wall at a speed of seventy miles per hour, leaving her car reduced to approximately half its original length. Could it be legitimately argued that it would take expert testimony to prove that the impact was hard enough to activate the air bags? I think not.
¶ 76. Based on the reasons discussed in this separate writing, I respectfully dissent. I would reverse and remand this case for a new trial.
KING, C.J., BRIDGES AND LEE, P.JJ., JOIN THIS SEPARATE OPINION.
NOTES
[1] The appellants' brief does not argue that GM breached any other type of express warranty. Indeed, both of the appellants' briefs cite three cases (for the correct standard of review), this statute, and M.R.C.P. 401. No other legal authority is provided.
[2] The dissent states that "[t]he Forbeses are faulted for not calling these engineers. Well, it seems indeed strange that GM would have engineers ready to refute the Forbeses's case and not put them on to testify, resting instead on the dubious notions, without the benefit of any precedent, that the Forbeses were required to prove, by expert testimony, their contention that the collision was hard enough to cause the air bag to inflate." The "dubious notion" is that GM properly and timely made a motion for directed verdict under M.R.C.P. 50(a). The purpose of such motion is to fault a party that does not present a legally sufficient case. In McKinzie v. Coon, 656 So.2d 134, 137 (Miss.1995), the supreme court ruled that M.R.C.P. 50 requires the trial court to take a case from a jury and grant a directed verdict if any verdict other than the one directed would be erroneous as a matter of law. Indeed, this was such a case. The reference to GM's engineers goes to the heart of the problems that the trial judge found, and the majority of this Court now finds, in this case. There was simply no credible expert testimony that the air bag did not operate as it was intended. Were the Forbes at fault for not calling these engineers? The apparent answer is yes. Had the engineers been called as part of the Forbes case-in-chief, they may have been able to produce the evidence necessary to establish the necessary elements of the appellants' claim that the trial judge and this Court find lacking.
[3] I do not disagree with the majority's finding that no error occurred in the trial's court's refusal to admit photographs of other wrecked GM vehicles in which the air bags inflated.
[4] The deposition testimony of Dr. Mollestion and Dr. Katz was not made a part of the record.